In re Mark J. TARANTO and Kimberly
Taranto, Debtors.

No. 05–81354.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

June 26, 2006.

Jonathan Krainess, Cleveland, OH, for Debtor.

Gregory Stout, Mapother & Mapother, Louisville, KY, for DaimlerChrysler Svc. NA, LLC.

## ORDER RE: OBJECTION TO CONFIRMATION OF DEBTORS' SECOND AMENDED PLAN

**MARILYN SHEA–STONUM,**
Bankruptcy Judge.

This matter is before the Court on the Objection (the "Objection") of DaimlerChrysler Fin. Servs. Amers. LLC sbmt DaimlerChrysler Servs. NA LLC ("DaimlerChrysler") to confirmation of the Debtors' proposed second amended chapter 13 plan (the "Plan"). On March 30, 2006, the Court held a hearing on the Objection. The Objection was served only on the Debtors, their counsel, the Chapter 13 Trustee and the United States Trustee.

Appearing at the hearing were Gregory Stout, counsel for DaimlerChrysler, and Jonathan Krainess, counsel for Debtors (defined below). The Plan provides for payment of the full principal amount of DaimlerChrysler's claim approximately 45 months sooner than provided for in the Contract (defined below). The Plan also provides for the payment of interest on DaimlerChrysler's claim at the same rate as set forth in the Contract (defined below) (0%), or alternatively, the Plan can be viewed as providing for no interest payments on Daimler Chrysler's claim.[1] Despite the fact that DaimlerChrysler is being paid the full principal amount owed to it and the Contract (defined below) between the Debtors and DaimlerChrysler had a zero percent (0%) interest rate, DaimlerChrysler argues that the 2005 amendments to § 1325 of the Bankruptcy Code should be further augmented by application of the Supreme Court's decision in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). In other words, DaimlerChrysler seeks interest at 1–3% above prime rate on its entire claim.

DaimlerChrysler's proof of claim asserts that the value of its collateral is $16,706.11. Applying the amended provisions of § 1325, the Debtors do not dispute that DaimlerChrysler is the holder of an allowed claim in the amount of $28,222.66 which is not subject to being stripped to the collateral value. The Plan proposes to pay the full principal amount owing to DaimlerChrysler as a secured claim. The only issue presented to the Court is whether DaimlerChrysler is entitled to interest on the full amount of its claim. Any resolution of this issue will directly impact the potential recovery by unsecured creditors in this case.

---

1. The initial objection to confirmation of the Plan [docket # 35] filed by DaimlerChrysler included objections to the failure to provide for adequate protection and for failure to treat DaimlerChrysler's entire claim as fully secured (the amount set forth in Debtors' Plan was off by 66¢). As the Debtors pointed out in their response to DaimlerChrysler's objection, an agreed order regarding adequate protection had been entered on the docket before DaimlerChrysler filed its Objection, *see* docket # 27, and the Debtors agreed to pay the additional 66¢ to DaimlerChrysler. Thus, the only remaining objection to the Plan was its failure to provide for the payment of interest on the entire amount of DaimlerChrysler's claim.

## Jurisdiction

This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (L). This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157(a) and (b)(1) and by the Standing Order of Reference entered in this District on July 16, 1984.

## Undisputed Facts

Mark and Kimberly Taranto (the "Debtors") filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on November 16, 2005 (the "Petition Date").

Prior to the Petition Date, on March 22, 2004, the Debtors and Brunswick Automart, Inc. entered into a Retail Installment Contract and Security Agreement (the "Contract") for the purchase of a 2004 Chrysler Town & Country (the "Town & Country"). The Contract provides that Debtors will purchase the Town & Country for $38,319.84 at 0% interest over seventy-two (72) months. The Contract provides that the Debtors may pay off the debt early, without penalty. The Contract was assigned to DaimlerChrysler.

DaimlerChrysler filed a proof of claim stating it holds a claim in the amount of $28,222.66 secured by the Town & Country which has a value of $16,706.11.

The Plan proposes to pay to Daimler-Chrysler the full claim amount[2] without interest in the first twenty-three months of their chapter 13 case, that is, more than three years ahead of the Contract scheduled payments. The Plan proposes to pay to the holders of unsecured claims 45% of the amount of their allowed claims. The amount which the Debtors will pay to the Chapter 13 Trustee under the Plan is determined by the best efforts and best in-

terest standards. 11 U.S.C. §§ 1322(a)(1) and 1325(a)(4). If DaimlerChrysler's Objection to the Plan is sustained, the interest payment that DaimlerChrysler seeks would come from funds that would otherwise be paid to holders of unsecured claims and thus would reduce the dividend to holders of unsecured claims.

No one disputes that the Town & Country, a motor vehicle, was purchased within the 910 day period immediately prior to the Petition Date and that the Debtors acquired it for their personal use.

## Discussion

This case is governed by the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"). At issue is the appropriate treatment, in light of the amendments to § 1325, of the claim of a creditor whose underlying debt is secured by a lien on a motor vehicle acquired for personal use and purchased within the 910 day period immediately preceding the bankruptcy. This issue is one of first impression for this Court and its resolution requires an interpretation of the unnumbered provision of § 1325(a) found immediately after § 1325(a)(9). When interpreting a statute, "[t]he language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *United States v. Palacios–Suarez*, 418 F.3d 692, 697 (6th Cir.2005) *citing United States v. Boucha*, 236 F.3d 768, 774 (6th Cir.2001).

The unnumbered paragraph immediately following § 1325(a)(9) provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a

---

**2.** Despite the Proof of Claim which clearly states that the Town & Country has a value of $16,706.11, the Debtors appear to concede

that DaimlerChrysler is the holder of an allowed secured claim in the amount of $28,222.66.

purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day (sic) preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle ... acquired for the personal use of the debtor.

For ease of reference, the Court will refer to this paragraph as the "910 Provision" and to creditors affected by the 910 Provision as "910 Creditors." The parties agree that the 910 Provision applies in this instance.

## What Type of Claim Does Daimler Chrysler Have?

■ Section 506(a)(1) provides, "An allowed claim of a creditor secured by a lien on property in which the estate has an interest, ..., is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." Although there are other provisions of the Bankruptcy Code that discuss claim allowance, there are no other provisions of the Bankruptcy Code that define when a claim "is a secured claim" and when it is not. Without application of § 506 of the Bankruptcy Code, an allowed claim cannot be labeled a "secured claim" as that phrase is used in the Bankruptcy Code.[3] The question, then, is how are 910 Creditors to be treated.

Since the effective date of BAPCPA, several other bankruptcy courts have interpreted the 910 Provision. *See In re Carver,* 338 B.R. 521 (Bankr.S.D.Ga.2006); *In re Johnson,* 337 B.R. 269 (Bankr. M.D.N.C.2006); *In re Brown, et al.,* 339 B.R. 818 (Bankr.S.D.Ga.); *In re DeSardi,* et al., 340 B.R. 790 (Bankr.S.D.Tex.); *In re Montoya,* 341 B.R. 41 (Bankr.D.Utah). Most of the courts interpreting the 910 Provision have held that it merely prevents the bifurcation of an allowed claim into a secured component and an unsecured component and ultimately reach the conclusion that the claims of 910 Creditors are to be *treated* as fully "secured claims." *In re Johnson,* 337 B.R. 269 (Bankr. M.D.N.C.2006); *In re Brown, et al.,* 339 B.R. 818 (Bankr.S.D.Ga.); *In re DeSardi, et al.,* 340 B.R. 790 (Bankr.S.D.Tex.); *In re Montoya,* 341 B.R. 41 (Bankr.D.Utah); *but see In re Carver,* 338 B.R. 521 (holding that if § 506 does not apply to an allowed claim, such claim cannot become a "secured claim").[4]

3. The 910 Provision only applies for the purposes of § 1325(a)(5). Thus, even if a claim is not a "secured claim" for the purposes of § 1325(a)(5), it may be a "secured claim" for other purposes under the Bankruptcy Code, including modification of a secured claim pursuant to § 1322. "A debtor is presumably bound only by the dictates of good faith and the other provisions of the Code in determining how such claims may be modified. Some courts, understandably, may look to prior law for guidance regarding what modifications are equitable." 8 Collier on Bankruptcy ¶ 1325.06[1][a].

4. As the *Carver* court points out, Congress could have made the amendments clearer by amending § 506 directly. *See* Jean Braucher, *Rash and Ride–Through Redux: The Terms for Holding on to Cars, Homes and Other Collater-* al Under the 2005 Act, 13 Am. Bankr.Inst. L.Rev. 457, 471–72 (Winter 2005) ("Perhaps the intent was to require full payment of these debts, even when dramatically undersecured because of the depreciation that occurs right after purchase, when the goods become used, but perhaps not. A large problem with the argument that the intention was to dictate full debt repayment for certain recently acquired collateral is that section 1325(a) nowhere says that."); *see also* 8 Collier on Bankruptcy ¶ 1325.06[1][a]. In fact, some of the earlier iterations of the bankruptcy reform legislation provided for amendments to § 506 on this specific point. *See Carver,* 338 B.R. at 525–26. Congress' rejection of these amendments makes it more difficult to discern precisely how Congress intended these 910 Creditors to be treated.

The challenge for courts seeking to interpret the 910 Provision is the *ouroboros* effect.[5] For a claimant to have the benefits of § 1325(a)(5), it must hold an allowed secured claim. Under the Bankruptcy Code, one holds an allowed secured claim only through operation of § 506. The 910 Provision specifically excludes the application of § 506. The canceling effect of the code operations described in the prior three sentences forces this Court to go beyond the text and consider what issues Congress viewed itself as addressing when it added the 910 Provision to the Bankruptcy Code. The legislative history, though admittedly scant, deals only with the pre-BAPCPA practice of measuring car lenders' claims by the value of the underlying collateral. H.R. Rep. 109–31(I), 2005 U.S.C.C.A.N. 88, 103.[6]

The language of the 910 Provision, in effect, appears to operate to create what, in most instances involving automobiles, will be recognition of an allowed claim in an amount greater than the value of the 910 Claimant's collateral and thus recognition of a claim that will receive preferred treatment as compared to what such claimants would have received prior to BAPCPA (the "910 Claim"). When one reads the legislative history, one finds evidence that Congress intended that the operation of the 910 Provision give 910 Creditors some new protections: the maintenance of their lien until the payment of the face amount of the principal and protection from the stripping of their lien to only the value of their collateral at the time of filing. There is no evidence in the legislative history, however, that Congress intended that the 910 Claim, which, by the very operation of the 910 Provision, is not an "allowed secured claim," should also receive the present value protection provided for in § 1325(a)(5)(B)(ii) on the 910 Claim amount where the value of the collateral securing the 910 Claim is less than the amount of the 910 Claim.

### How Should DaimlerChrysler's Claim be Treated Under § 1325(a)(5)

■ DaimlerChrysler argues that it is in the position of a creditor who must be compensated for a delay due to an intervening chapter 13 and, thus, is entitled to receive interest on its allowed claim. As a 910 Creditor whose collateral is worth less than its claim DaimlerChrysler is compensated by the inflation of its allowed claim amount that will be entitled to payment without bifurcation into secured and unsecured amounts. In addition, under the facts and circumstances of this case, DaimlerChrysler will receive all of the contractual amounts to which it is entitled and it will receive the last payment of that amount approximately 45 months ahead of schedule.

Prior to BAPCPA, the generally accepted purpose of § 1325(a)(5) was to place the

---

**5.** The Ouroboros (also spelled Oroborus, Uroboros, Uroborus) is an ancient symbol depicting a serpent or dragon swallowing its own tail.

**6.** "Protections for Secured Creditors. S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910–day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. Where the collateral consists of any other type of property having value, S. 256 prohibits bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case. The bill clarifies current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing." Presumably the last sentence of the legislative history refers to the amendments made to section 506 and not to the amendments to section 1325.

holder of an allowed secured claim in the same position economically as if the debtor exercised the option of surrendering the collateral. Collier on Bankruptcy–15th Edition Rev. ¶ 1325.06. Pre–BAPCPA, the valuation construct applicable in Chapter 13 cases allowed bifurcation of each allowed claim into a secured component based on the value of the collateral securing the underlying debt and an unsecured component. This is still the construct applicable to non–910 Claims. In a plurality decision, the Supreme Court found that adding interest at a "prime plus" rate to the allowed amount of a secured claim properly compensated creditors for the delay in receiving the amount of the allowed *secured* claim. *See Till v. SCS Credit Corp.*, 541 U.S. at 474, 124 S.Ct. 1951 ("The challenge for bankruptcy courts reviewing such repayment schemes, therefore, is to choose an interest rate sufficient to compensate for those concerns.").

For 910 Creditors, the paradigm has changed. The amount of the allowed claim is now a construct based on the 910 Provision's prohibition against bifurcation, and is without regard to the value of the collateral. This artificial inflation of the amount of the 910 Claim reduces the risk exposure against which the Supreme Court was trying to protect pre-BAPCPA creditors in the cram down—strip down situation addressed in *Till.* To allow both inflation of the allowed amount of the claim and application of interest under *Till* ignores the economic realities of this case and perhaps the vast majority of 910 Claims.

The Court will not blindly apply *Till* given this different context where no such risk exposure exists. *See Bank of Montre-*

al, et al. v. Official Committee of Unsecured Creditors (In re American HomePatient, Inc.), 420 F.3d 559, 568 (6th Cir.2005)(declining to "blindly" apply *Till's* prime plus approach in context of Chapter 11 cram down given that the context was different from that in *Till,* and applying one of the other methodologies rejected by the Supreme Court to determine the proper cram down interest rate). In this case, where the Plan proposes to pay a truly undersecured (based on the value set forth in the proof of claim) 910 Creditor the entire face amount of the principal in a shorter time period than originally contemplated under the Contract, *Till* does not apply. *See, e.g., In re Pryor,* 341 B.R. 648, 651–52 (Bankr.N.D.Ill.2006) ("A plan proposing to pay a secured creditor's claim on an unmodified basis, in full according to the terms of the contract . . . is not a cram down. In that event, the creditor would be stuck with the contract rate of interest no matter how low it was.") Under the Plan as currently proposed, DaimlerChrysler is going to receive better treatment than it would had the Debtors strictly performed under the Contract (by receiving its money sooner) or under state law, had the Debtor defaulted under the Contract and not filed for bankruptcy (by being entitled to more than the proceeds from sale of the Town & Country and an unsecured claim for the deficiency). *See e.g.,* O.R.C. § 1309.615. Requiring the payment of additional interest on DaimlerChrysler's 910 Claim under a "prime plus" calculation would produce an unjustified windfall to DaimlerChrysler at the expense of the Debtors' unsecured creditors who were not served with the Objection.[7]

---

7. Although neither party raised any constitutional issues, courts are admonished to address statutory interpretation in a manner that minimizes or avoids constitutional questions. *See I.N.S. v. St. Cyr,* 533 U.S. 289, 299–

300, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) ("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' ..., we

The enactment of the 910 Provision was meant to provide "fair," not preferential or discriminatory, treatment to a certain type of secured creditor.[8] *Carver*, 338 B.R. at 527. Application of *Till* in this circumstance would result in an unfair diminution in the distribution to be made by the Debtors to their unsecured creditors and an unjustified windfall to DaimlerChrysler, and it is unnecessary.

Nothing in the 910 Provision addresses payment of interest on the 910 Claim. The entitlement to interest on the 910 Claim must be addressed on the facts of the particular claim. There may be circumstances where the value of the collateral securing the 910 Claim is in fact greater than the amount of the 910 Claim and payment of interest either at the contract rate or at a constructed rate is justified on the record evidence of that case. The Plan in this case provides Daimler Chrysler with "fair" treatment by application of the 910 Provision. As discussed below, DaimlerChrysler has failed to present any evidence that disproves that payment of the underlying debt in full through the Plan without interest is unfair to it.

**Even if Till is applicable, Creditor failed to Meet Burden**

█ Finally, assuming that *Till* were applicable to the facts of this case, DaimlerChrysler has failed to show that it is entitled to any interest rate other than the one proposed by the Debtors in the Plan. Under *Till,* the evidentiary burden falls squarely on the secured creditor to estab-

lish the need for an interest rate higher than the one proposed by the Chapter 13 debtor. *In re Bivens,* 317 B.R. 755, 764 (Bankr.N.D.Ill.2004) *citing Till,* 541 U.S. at 479, 124 S.Ct. 1951 ("The court must therefore hold a hearing at which the debtor and any creditors may present evidence about the appropriate risk adjustment...the evidentiary burden [is] squarely on the creditors, who are likely to have readier access to information."); *Baxter v. Berksteiner (In re Berksteiner),* 2004 WL 2201300, *2 (Bankr.S.D.Ga.2004). DaimlerChrysler presented the Court with no evidence, beyond its statement that "it should receive 1 to 3 percentage points above the prime rate," to establish the need for an interest rate higher than the one proposed by the Debtors.

**Conclusion**

For all of the reasons set forth above, the Court overrules the objection of DaimlerChrysler to the Plan. The confirmation hearing regarding the Plan is scheduled for July 27, 2006 at 1:30 p.m.

---

are obligated to construe the statute to avoid such problems.") This Court views this interpretation of the 910 Provision to minimize possible substantive due process issues with respect to the 910 Provision. Should there be an appeal or appeals of this decision, the parties who have briefed this matter are advised that the Court views all holders of unse-

cured claims in this case to be interested parties who should be served with a party's notice of appeal.

8. BAPCPA § 306 which contains the 910 Provision was titled "Giving Secured Creditors Fair Treatment in Chapter 13."