In re Gerardo Antonio TREJOS, Jr.;
Christina Ann Trejos, Debtors.

Gerardo Antonio Trejos, Jr.; Christina
Ann Trejos, Appellants,

v.

VW Credit, Inc.; Rick A. Yarnall,
Chapter 13 Trustee,
Appellees.

BAP No. NV–06–1400–DES.
Bankruptcy No. 06–1023.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted on May 17, 2007.

Filed: July 30, 2007.

Christopher P. Burke, Esq., Christopher P. Burke & Associates, Las Vegas, NV, for Appellant.

Tyler B. Jones, Esq., Brice, Vander, Linden & Wernick, Dallas, TX, for Appellees.

Before DUNN, EFREMSKY[1] and SMITH, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

The bankruptcy court ruled that creditor held by assignment a valid purchase-money security interest in debtors' vehicle purchased within the 910-day period immediately preceding the date debtors filed their voluntary chapter 13[2] petition, making creditor's claim subject to the anti-

cramdown provision in the "Hanging Paragraph" of § 1325(a). As a result, the bankruptcy court held that the debtors were required to pay the full amount of the creditor's claim over the life of their chapter 13 plan, irrespective of the value of the vehicle. We AFFIRM.

## I. FACTS

On July 5, 2005, Gerardo Trejos ("Mr. Trejos") executed a Vehicle Retail Installment Contract and Security Agreement ("Contract") pursuant to which Mr. Trejos purchased a 2002 Volkswagen Passat ("Vehicle") from Desert Volkswagen ("Dealer") for the purchase price of $18,701.40, together with interest at the rate of 13.35% per annum.[3] The Dealer assigned its interest in the Contract to VW Credit, Inc. ("VW Credit") on July 15, 2005.

Mr. and Mrs. Trejos filed their chapter 13 bankruptcy petition on February 21, 2006 ("Petition Date"), a date less than 910 days after the vehicle purchase. The Trejos included the obligation to VW Credit on their "Schedule D. Creditors Holding Secured Claims," asserting that the amount of VW Credit's claim was $17,000 and that the value of the Vehicle was $10,000. In their chapter 13 plan ("Plan") filed February 23, 2006, the Trejos proposed to pay VW Credit, as a creditor with an allowed secured claim, the full $17,000 the Trejos believed they owed VW Credit, together with interest at 8%.

---

1. Hon. Roger Efremsky, United States Bankruptcy Judge for the Northern District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated as of October 17, 2005, the effective date of most of the provisions of the Bankruptcy

Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23 ("BAPCPA").

3. The car was purchased for Christina Trejos' ("Mrs. Trejos") use, but because she did not have good enough credit to obtain financing, the Contract was executed by Mr. Trejos only, and Mr. Trejos is listed as the sole owner of the Vehicle on the Certificate of Title.

VW Credit objected on the basis that the Plan provided neither for payment of the full amount of its debt,[4] *i.e.,* $18,802.38, nor interest on that debt at the contract rate of 13.35%, both of which VW Credit believed it was entitled to because of language added to 1325(a) through the enactment of BAPCPA (the "Hanging Paragraph"). The Hanging Paragraph provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing.

In response, the Trejos stated their intent was to pay VW Credit the "fair market value" of the Vehicle, which they intended to prove was less than the $17,000 provided in the Plan, with interest at 8%. In effect, the Trejos announced their intent to "cram down" VW Credit's claim to the value of the Vehicle, and pay that amount, with interest, as an allowed secured claim. The Trejos asserted that any prohibition against "cramdown" incorporated into § 1325(a)(5) by the Hanging Paragraph did not apply to VW Credit's

claim because the Dealer's assignment of the Contract to VW Credit destroyed the purchase money character of the security interest under the Contract. The Trejos also argued that 8% is a proper interest rate because BAPCPA did not amend the Bankruptcy Code to overrule *Till v. SCS Credit Corp.,* 541 U.S. 465, 468–69, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). Alternatively, the Trejos asserted that if VW Credit did have a purchase money security interest in the Vehicle, because the "Hanging Paragraph" made § 506 inapplicable to VW Credit's claim, it thereby precluded VW Credit from having an "allowed secured claim." Instead, the Trejos contended, VW Credit had only an unsecured claim.[5]

The bankruptcy court held that the purchase money character of the security interest in the Vehicle was not lost when the Dealer assigned the Contract to VW Credit. Consequently, VW Credit's claim was subject to the "Hanging Paragraph," with the result that the Plan had to be modified to pay VW Credit's allowed secured claim of $18,802.38 in full. The bankruptcy court further held that the *Till* formula, not the Contract, determined the applicable rate of interest, in this case 8%. The Trejos appealed the confirmation order with respect to the bankruptcy court's determination of the allowed amount of VW Credit's secured claim. VW Credit did not appeal the bankruptcy court's interest rate determination.

## II. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and

---

4. VW Credit filed a secured claim in the bankruptcy case in the amount of $18,802.38, representing the total debt owed under the Contract on the Petition Date.

5. The Trejos also asserted that regardless of whether VW Credit's claim was treated as secured, undersecured, or unsecured, the Plan was confirmable where it proposed a

100% distribution to unsecured creditors. However, in exploring whether this proposition might make the contested matter moot, the Trejos conceded that whether interest was to be paid to VW Credit, and if so, in what amount, remained an issue regardless of the fact that the Trejos proposed a "100%" plan.

157(b)(1) and (b)(2)(K), (L), and (O). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158.

## III. ISSUES

Whether the bankruptcy court erred in holding that VW Credit has a purchase money security interest in the Vehicle.

Whether the bankruptcy court erred in holding that the "Hanging Paragraph" prevented the Trejos from limiting VW Credit's secured claim to the value of the Vehicle.

## IV. STANDARDS OF REVIEW

■ We review issues of statutory construction and conclusions of law, including interpretation of provisions of the Bankruptcy Code, de novo. *Einstein/Noah Bagel Corp. v. Smith (In re BCE W., L.P.),* 319 F.3d 1166, 1170 (9th Cir.2003).

## V. DISCUSSION

A. *Section 1325(a)(5) and the "Hanging Paragraph"*

The requirements for confirmation of a chapter 13 plan are found in § 1325. With respect to secured creditors, § 1325(a)(5) requires generally that a chapter 13 plan must provide one of three alternative treatments: treatment to which the secured creditor consents; retention of collateral by the debtor with a stream of payments to the secured creditor; or surrender of the collateral to the secured creditor. In this case, the Trejos have elected to retain the Vehicle and to provide VW Credit with a stream of payments. This option requires further compliance with § 1325(a)(5)(B), such that the plan (1) must provide that VW Credit retain its lien until the earlier of payment of the underlying debt pursuant to non-bankruptcy law or the issuance of the Trejos' discharge, (2) distribute to VW Credit the present value of its claim as of the Petition Date, and (3) provide for equal monthly payments in an amount sufficient to provide adequate protection to VW Credit.

As noted above, BAPCPA added the following additional text to § 1325(a):

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910–day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1–year period preceding that filing.

Although this language was not placed in § 1325(a)(5), its location in § 1325(a) and its internal reference to paragraph (5) strongly suggest that it relates specifically to the treatment of secured claims under the plan.[6] This construction is reinforced by reference to the BAPCPA legislative history.[7]

> Protections for Secured Creditors. S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the

---

6. Claims which fall within the protection of the "Hanging Paragraph" are referred to as "910 Vehicle Claims" hereafter in this Opinion.

7. "The history of the hanging paragraph is recounted in detail in William C. Whitford, *A History of the Automobile Lender Provisions of BAPCPA,* [2007 U. Ill. L.Rev. 143]." *In re Trejos,* 352 B.R. 249, 252 n. 3 (Bankr.D.Nev. 2006).

910–day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. . . .

H.R.Rep. No. 109–31, pt. 1 at 17 (2005), *as reprinted in* E–2 *Collier on Bankruptcy* at App. Pt. 10–268 (15th rev. ed.2007).

■ The language of the "Hanging Paragraph"

. . . requires that certain conditions exist before the full amount of the claim must be treated as secured. These conditions are as follows:

· The creditor must have a purchase-money security interest; and

· The purchase-money security interest must secure the debt that is the subject of the claim; and

· That debt must be incurred no more than 910 days before the date of the debtor's filing; and

· The collateral for the debt must be a "motor vehicle;" and

· That motor vehicle must have been acquired for the personal use of the debtor.

*In re Trejos,* 352 B.R. 249, 264 (Bankr. D.Nev.2006). The Trejos concede that with one exception, VW Credit's claim meets all of the foregoing conditions. Specifically, the Trejos assert that VW Credit does not hold a purchase-money security interest because the security interest lost its purchase-money character when the Dealer assigned it to VW Credit.

B. *VW Credit is Entitled to the Protection of the "Hanging Paragraph"*

■ To determine whether VW Credit holds a purchase-money security interest, we must look to state law. *See Philip Morris Capital Corp. v. Bering Trader, Inc. (In re Bering Trader, Inc.),* 944 F.2d 500, 502 (9th Cir.1991). Under NEV. REV.

STAT. § 104.9103.1(b), the Trejos' debt to the Dealer was a "purchase money obligation" since it was an "obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." Further, the Vehicle constituted "purchase money collateral" as "goods or software that secures a purchase-money obligation incurred with respect to that collateral." NEV. REV. STAT. § 104.9103.1(a). Finally, the Dealer's security interest was a purchase-money security interest "to the extent" the Vehicle is "purchase-money collateral with respect to that security interest." NEV. REV. STAT. § 104.9103.2.

The Trejos do not contest that the Dealer held a purchase-money security interest under the Contract. Rather, they assert that the purchase-money security interest was destroyed when the Dealer assigned the Contact to VW Credit. We disagree.

■ An assignment

. . . of a right is a manifestation of the assignor's intention to transfer it by virtue of which the assignor's right to performance by the obligor is extinguished in whole or in part and the assignee acquires a right to such performance.

RESTATEMENT (SECOND) OF CONTRACTS § 317(1) (1981) (Ch. 15 Assignment and Delegation). An assignee typically "steps into the shoes" of an assignor. *See New Falls Corp. v. Boyajian (In re Boyajian),* 367 B.R. 138, 144–45 (9th Cir. BAP 2007).

■ "Where a secured claim is assigned, the collateral is ordinarily assigned as well." RESTATEMENT (SECOND) OF CONTRACTS § 340 cmt. b. In this case, the language of the assignment provides expressly that the security interest in the Vehicle was being assigned. The Restatement provides the following further guidance

concerning the impact of an assignment on the security interest:

> An assignee is entitled to priority of payment from the obligor's insolvent estate to the extent that the assignor would have been so entitled in the absence of the assignment.

RESTATEMENT (SECOND) OF CONTRACTS § 340(1).

A number of courts have held that the assignment of a security interest does not destroy its purchase-money status. *See, e.g., In re Brooks,* 74 B.R. 418, 420 (Bankr. N.D.Ga.1987)("Only the identity of the holder of the security interest was changed by the assignment, not the nature of the interest itself."); *Credithrift of America v. Littlejohn (In re Littlejohn),* 20 B.R. 695, 697 (Bankr.W.D.Ky.1982)(holding that creditor held a purchase money security interest in household furniture "by virtue of assignment of the retail installment contract from the seller"); *In re Smallwood,* 20 B.R. 699 (Bankr.W.D.Ky.1982).

The Trejos argued before the bankruptcy court that as a general matter, the purchase-money character of the security interest is lost merely because it is transferred:

> THE COURT: So when someone else takes that security interest by assignment, it loses its status as purchase money?
>
> MR. BURKE: That's our argument.
>
> THE COURT: Why?
>
> MR. BURKE: Because they didn't provide—they have the rights to collect the payments, but they're not the one who, A, provided the funding, initially, and it wasn't purchased from them. VW Credit is not a dealer. They're a bank ... they're not ... selling the vehicle.

Transcript of Proceedings 84:2–14, June 20, 2006. However, in this appeal, the Trejos do not assert as a general principle that assignment of a purchase-money security interest destroys the purchase-money character of the security interest transferred by the assignment. Rather, they argue only that because the assignment in this case modified the Contract, VW Credit did not receive a purchase-money security interest from the Dealer.

In support of their position that the Contract was modified by the assignment to VW Credit, the Trejos state as follows:

> [W]hen [the Dealer] initially sold the vehicle, none of the four (4) options on the back of the contract were checked. These options included "recourse, repurchase, limited endorsement, or without recourse." After the assignment, the [Contract] was modified by [VW Credit] when it selected one (1) of the four (4) option [sic] on the back of the [Contract].

Appellant's Opening Brief, 3:20–25, February 8, 2007 (internal citations omitted).

We disagree that Dealer's assignment to VW Credit "modified" the Contract. The "four options" on the back of the Contract to which the Trejos refer are part of the "Additional Terms and Conditions" incorporated into the Contract; the "four options" are set out under the topic: "Assignment." The assignment did not modify any obligation of Mr. Trejos under the Contract. The option that was checked at the time of the assignment merely provided that VW Credit had no recourse against the Dealer. In other words, if the Trejos defaulted under the Contract, VW Credit could not look to the Dealer but instead must enforce the Dealer's rights under the Contract as assigned to VW Credit.

Nor did a substitution of VW Credit for the Dealer work a novation, as asserted by the Trejos. The Restatement clarifies the difference between an assignment and a

novation with respect to the Trejos' duties under the Contract.

Obligees may also be substituted by assignment of a right, which differs from novation in that assignment requires neither the knowledge nor the assent of the obligor and cannot change the performance to be rendered by him.

RESTATEMENT (SECOND) OF CONTRACTS § 280 cmt. e. We reiterate that under the assignment, VW Credit simply stepped into the Dealer's shoes; the Trejos' performance obligations under the Contract did not change. An assignment by its very nature substitutes one entity for another as a holder of rights. To hold that this substitution in and of itself constitutes a novation would be to hold that every assignment constitutes a novation of the underlying contract.

Since the Contract was not modified when it was assigned to VW Credit, the purchase-money character of the security interest granted in the Contract was not destroyed. Therefore, the "Hanging Paragraph" applies to VW Credit's claim.

C. *The Interplay Between § 506 and § 1325(a)(5)*

Section 506(a)(1) provides in relevant part that

[a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.

The Trejos assert that because § 506 does not apply to 910 Vehicle Claims, VW Credit's claim cannot be an "allowed secured claim." Instead, the claim is unsecured. This position assumes that § 506

provides the exclusive basis for determining secured status under the Code. It does not.

1. *The Minority View*

The Trejos rely both on reported case law and on a leading bankruptcy treatise in support of their position.

[The "Hanging Paragraph"] states that for purposes of section 1325(a)(5), section 506 shall not apply to certain claims. Such claims, therefore, *cannot be determined to be allowed secured claims under section 506(a) and are not within the ambit of section 1325(a)(5)*

. . . .

It is possible that [the "Hanging Paragraph"] was intended to prohibit the use of section 506(a) to bifurcate a secured claim into an allowed secured claim and an allowed unsecured claim as part of the cramdown permitted by section 1325(a)(5)(B) and, therefore, that such claims should be treated as fully secured claims regardless of the value of the collateral. But, even if that was the intent, because [the "Hanging Paragraph"] renders entirely inapplicable for some creditors the only section, section 506(a), that gives those creditors allowed secured claims, it does not to [sic] carry out such intent.

8 *Collier on Bankruptcy* ¶ 1325.06[1][a] (15th rev. ed.2007) (emphasis added).

A limited number of courts, holding that application of § 506(a) is essential to determine what constitutes an "allowed secured claim," similarly have determined that the "Hanging Paragraph" precludes the holder of a 910 Vehicle Claim from having an "allowed secured claim." The implications of their holdings as applied have varied.

For example, the court in *In re Wampler*, 345 B.R. 730, 736 (Bankr.D.Kan. 2006), stated that

> The provisions of §§ 502 and 506, read together, establish the *only* means by which a court may determine that an allowed claim should be allowed as a secured claim. (Emphasis added).

The court went on to decide that although the unambiguous language of the "Hanging Paragraph" requires that a 910 Vehicle Claim be paid in full, because § 506(a) does not apply, neither does the present value, *i.e.* interest, payment provision in § 1325(a)(5)(B)(ii), since the 910 Vehicle Claim is not an "allowed secured claim." *Id.* at 740.

In adopting the approach taken by the *Wampler* court, the court in *In re Kinsey*, 368 B.R. 888, 895–96 (Bankr.D.Kan.2007), stated

> Lenders enjoy special treatment for their 910 car claims in Chapter 13 because of the Hanging Paragraph, but these claims are no longer treated as allowed secured claims under the plan and are not entitled to postpetition interest under § 1325(a)(5)(B)(iii).

Similarly, in *In re Taranto*, 344 B.R. 857, 860 (Bankr.N.D.Ohio 2006), the court reasoned that other provisions of the Code discuss claim allowance, but no other provisions in the Code "define" when a claim is a secured claim and when it is not. As a result, without § 506(a) an "allowed claim" cannot be labeled a "secured claim" for purposes of the Code. *Id.* at 860. As for the treatment of a 910 Vehicle Claim, the *Taranto* court determined it was enough that the creditor receive the full amount of its claim under the plan, without interest, both because the "Hanging Paragraph" did not address the creditor's entitlement to interest and because interest payments would be unfair to unsecured creditors in the case, especially where the value of the vehicle is worth less than the "allowed claim." *Id.* at 861. The 6th Circuit Bankruptcy Appellate Panel, as noted below, recently rejected this analysis. *In re Taranto*, 365 B.R. 85 (6th Cir. BAP 2007).

In *In re Carver*, 338 B.R. 521, 525 (Bankr.S.D.Ga.2006), the court held:

> [N]othing in the text of the hanging paragraph suggests that Congress intended 910 claims to be treated as secured claims. The only generally applicable definition of a secured claim comes from § 506. By rendering that section inapplicable to 910 claims, Congress expressly eliminated the mechanism by which they could be treated as secured under the Chapter 13 plan.

Recognizing that holding 910 Vehicle Claims could not be "allowed secured claims" meant they were not entitled to treatment under § 1325(a)(5), the *Carver* court went on to "extrapolate congressional intent" to craft a formula for their treatment. *Id.* at 527. Starting with the premise that Congress did not intend the "Hanging Paragraph" to punish holders of 910 Vehicle Claims, the court imposed a rule which it adapted from § 1111(b). Under the *Carver* rule:

> In a Chapter 13 plan, a 910 claim must receive the *greater* of (1) the full amount of the claim without interest, or (2) the amount the creditor would receive if the claim were bifurcated and crammed down (i.e., secured portion paid with interest and unsecured portion paid pro rata).

*Id.* at 528 (emphasis in original).

*Carver* was decided relatively early among the substantial body of cases construing the "Hanging Paragraph," and as noted above, is a minority view. As such, it has received much criticism from those courts taking the majority view, discussed

below. In the face of that criticism, the judge reasserted his position in *Carver* in a later decision. *In re Green*, 348 B.R. 601, 611–12 (Bankr.M.D.Ga.2006) ("I will continue to follow my decision in *Carver*. It would be more convenient to follow the consensus of opinion if I could do so in good conscience, but I do not believe the majority view correctly follows established principles of statutory construction.").

### 2. *The Majority View*

The great majority of courts which have reviewed the impact of removing § 506 from application to 910 Vehicle Claims have held that the "Hanging Paragraph" simply provides that debtors cannot bifurcate a 910 Vehicle Claim into secured and unsecured claims based upon the value of the vehicle on the petition date. *See, e.g., Citifinancial Auto v. Hernandez-Simpson*, 369 B.R. 36 (D.Kan.2007); *In re Taranto*, 365 B.R. 85 (6th Cir. BAP 2007); *In re Montgomery*, 341 B.R. 843 (Bankr. E.D.Ky.2006); *In re Montoya*, 341 B.R. 41, 44 (Bankr.D.Utah 2006)("The existence of a claim is usually determined by non-bankruptcy substantive law, whereas valuation of that claim is determined by § 506."); *In re Fleming*, 339 B.R. 716 (Bankr.E.D.Mo.2006); *In re Jackson*, 338 B.R. 923 (Bankr.M.D.Ga.2006); *In re Ezell*, 338 B.R. 330 (Bankr.E.D.Tenn. 2006); *In re Horn*, 338 B.R. 110 (Bankr. M.D.Ala.2006); *In re Robinson*, 338 B.R. 70 (Bankr.W.D.Mo.2006); *In re Johnson*, 337 B.R. 269 (Bankr.M.D.N.C.2006). Many of these courts reject the premise that § 506(a) is a definitional provision without which there cannot be an "allowed secured claim." Some courts take direction from the Supreme Court:

the words "allowed secured claim" ... need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision. Rather the words should be read term-by-term to refer to any claim that is, first, allowed, and, second, secured.

*Dewsnup v. Timm*, 502 U.S. 410, 415, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992)(construing the relationship between § 506(a) and "allowed secured claim" in § 506(d)). *See, e.g., In re Morris*, 370 B.R. 796 (E.D.Wis. 2007).

One court also noted that in its "careful analysis" of § 506(a) in *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997), the Supreme Court "never suggested that § 506(a) defines 'secured' or that a claim is unsecured for purposes of Chapter 13 plan confirmation without § 506." *In re Brooks*, 344 B.R. 417, 421 (Bankr.E.D.N.C. 2006). The court in *In re Brown*, 346 B.R. 868, 873 (Bankr.N.D.Fla.2006), stated:

Just because § 506 does not apply does not mean that there is no secured claim. Section 506(a) simply provides for bifurcation of claims into secured and unsecured portions in accordance with the value of the collateral; it does not form the basis for a secured claim. *See Raleigh v. Ill. Dept. of Rev.*, 530 U.S. 15, 20[, 120 S.Ct. 1951, 147 L.Ed.2d 13] (2000)("[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation....").

In its analysis, the bankruptcy court below noted as a threshold matter that the structure of the Code itself offers some suggestion that § 506(a) was not intended as a definitional provision since the Code provides for definitions in Chapter 1. *Trejos*, 352 B.R. at 261.

Some courts find definitions of the terms "allowed" and "secured" by broader review of the Code. For example, the court in *In re Brown*, 339 B.R. 818, 821 (Bankr. S.D.Ga.2006), held that § 502 applies to

determine whether a claim is "allowed": "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects." The *Brown* court then looked to § 101(37) to determine whether a debt is "secured" by a lien. *Id.* In § 101(37), the Code defines "lien" as "a charge against or interest in property to secure payment of a debt or performance of an obligation."

Other courts simply have held that state law applies to determine whether a claim is "secured." *In re Scruggs,* 342 B.R. 571, 574 (Bankr.E.D.Ark.2006); *Brooks,* 344 B.R. at 422 ("The 'determination of property rights in the assets of a bankrupt's estate' is left to state law."); *see also In re Henry,* 353 B.R. 261 (Bankr.D.Or.2006)(adopting the approach of both *Brooks* and *Brown*[8]).

### 3. *Section § 506(a) Does Not Define "Allowed Secured Claim"*

 ... Congress has decided, as a policy matter, under the BAPCPA revisions to the Code, that debtors should repay in a Chapter 13 the amount they actually agreed to pay for a motor vehicle purchased within 910 days of bankruptcy, instead of the true value of the collateral, which policy this Court must, of course, enforce.

*In re Vega,* 344 B.R. 616, 618 n. 8 (Bankr. D.Kan.2006). We agree that this was the purpose underlying the "Hanging Paragraph." We further agree that (a) it is "neither necessary nor appropriate to contort § 506(a) into a definitional provision," *Brown,* 339 B.R. at 821; (b) that, when applying the "Hanging Paragraph," "the value of the collateral is irrelevant in de-termining the allowed amount of the secured claim" *Fleming,* 339 B.R. at 722; and (c) that "a creditor's secured status is dictated by state law while the treatment of secured claims is dictated by the Bankruptcy Code," *In re Shaw,* 341 B.R. 543, 546 (Bankr.M.D.N.C.2006). Accordingly, we hold that the "Hanging Paragraph" operates to preclude bifurcation of a 910 Vehicle Claim for purposes of § 1325(a)(5)(B). The bankruptcy court did not err in requiring that the Plan pay the full amount of VW Credit's claim.

### D. *Modification of VW Credit's Rights Pursuant to § 1322(b)(2)*

Because the Trejos seek to retain the Vehicle, they must comply with § 1325(a)(5)(B), including subpart (ii):

> The value, as of the effective date of the plan, of property to be distributed under the plan on account of [VW Credit's] claim is not less than the allowed amount of [VW Credit's] claim.

VW Credit asserted before the bankruptcy court that because it was entitled to payment of its claim in full through application of the "Hanging Paragraph," the Trejos were required to provide interest at the rate set forth in the Contract. The bankruptcy court disagreed, and held that nothing in BAPCPA or the "Hanging Paragraph" restricted modification of VW Credit's rights other than with respect to the amount of its secured claim for purposes of § 1325(a)(5). The bankruptcy court determined that § 1322(b)(2) remains applicable for modification of such rights as monthly payment amounts and interest rate.[9] *Trejos,* 352 B.R. at 263 n. 25. VW Credit has not pursued this issue on appeal.

---

8. To avoid confusion, since two *Brown* cases are cited in this Opinion, we note that the *Brown* case referenced here is from the Southern District of Georgia (339 B.R. 818).

9. The text of § 1325(a)(5)(B)(ii) did not change under 9 BAPCPA. The phrase "as of the effective date" previously was recognized to require an interest component be paid so as to ensure that the creditor receive the present value of its claim. The Supreme

The Trejos, however, assert as error the failure of the bankruptcy court to allow them to use § 1322(b)(2) to "modify the value of VW's claim." Appellant's Opening Brief 6:2–5, February 9, 2007. We find no error in the bankruptcy court's determination. It is clear from the language of the statute that § 1325(a)(5) and the "Hanging Paragraph" specifically operate to determine the amount to be paid to VW Credit without reference to the Vehicle's value. On the other hand, § 1322(b)(2) generally allows modifications of creditors' rights through a chapter 13 plan. It is axiomatic that a specific statute supersedes one of more general application. The Trejos' proposed use of § 1322(b)(2) would make nullities of § 1325(a)(5)(B) and the "Hanging Paragraph."

## VI. CONCLUSION

The assignment to VW Credit did not destroy the purchase money character of the security interest. The "Hanging Paragraph" does not prevent VW Credit from asserting that its claim is secured for purposes of § 1325(a)(5). The "Hanging Paragraph" precludes the Trejos' proposed cramdown of VW Credit's secured claim. Finally, § 1322(b)(2) does not authorize the Trejos to modify the rights of VW Credit with respect to the value of its claim to be paid under § 1325(a)(5)(B), as determined by application of the "Hanging Paragraph."

We AFFIRM.

Court addressed the calculation of present value interest under § 1325(a)(5)(B)(ii) in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004), and set "prime-plus" as the proper method for determining the interest rate that would provide present value. Most courts that have considered the issue have held that, since § 1325(a)(5)(B)(ii) remains unchanged under BAPCPA, *Till* remains valid under BAPCPA. Because the issue is not before us in this appeal, we save it for another day.