[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-14163

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Aug. 7, 2008
THOMAS K. KAHN
CLERK

D.C. Docket Nos.
06-00144-CV-WLS-1 &  06-10223-BKC-JD

JAMES WYLEE DEAN,
STACIE L. DEAN,

                                                                  Debtors.

_____

NUVELL FINANCIAL SERVICES CORP.,

                                                                  Plaintiff-Appellant,

                                    versus

JAMES WYLEE DEAN,
STACIE L. DEAN,
a.k.a. Stacie L. McGee,
a.k.a. Stacie L. Calhoun,

                                                                  Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(August 7, 2008)**

Before TJOFLAT and MARCUS, Circuit Judges, and VINSON,[*] District Judge.

VINSON, District Judge:

Nuvell Credit Company, LLC, f/k/a Nuvell Credit Corporation ("Creditor") directly appeals the bankruptcy court's Order Confirming Chapter 13 Plan in the case of James and Stacie Dean ("Debtors"). Central to this appeal is the question of whether a claim that falls within the "hanging paragraph" at the end of Title 11, United States Code, Section 1325(a)(9), is an allowed secured claim entitling the Creditor to payment in full, plus post-petition interest.[1]

## I. BACKGROUND

The facts of this case are undisputed and can be stated briefly. On June 15, 2004, the Debtors purchased a 2004 Kia Spectra vehicle for their personal use, utilizing a retail installment sales contract. The contract provided for a finance charge of 16.95%, and it was assigned to the Creditor for value. On March 16, 2006, the Debtors filed for Chapter 13 bankruptcy. At that time, the Debtors still owed

---

[*] Honorable C. Roger Vinson, Senior United States District Judge for the Northern District of Florida, sitting by designation.

[1] The section in question has been called the hanging paragraph because, although it is set forth as a subparagraph following 11 U.S.C. § 1325(a)(9), it is not separately designated by letter or number. Rather, it just "hangs" without ordered designation and without surrounding context. It has been variously referred to by courts as section 1325(a)(9), section 1325(a)(*), and as the "hanging paragraph." For purposes of this opinion, we will use hanging paragraph in text and § 1325(a)(*) for citations.

$14,571.72 on the vehicle, and the Creditor filed a secured claim in that amount. In their plan, the Debtors proposed to pay $8,475.00 (the value of the vehicle at that time), plus interest at a rate of 7.5%. The Creditor objected to confirmation of the plan on the grounds that it was entitled to the full amount of its claim and that "the proposed rate of interest is insufficient to pay [the Creditor] the present value of its claim." Relying on two of his earlier decisions in similar cases, discussed *infra*, the bankruptcy judge held that the Creditor was entitled to receive the full amount of the claim, but *without* post-petition interest. Upon review, and pursuant to Title 28, United States Code, Section 158(d)(2)(A), the district court certified this direct appeal in order to, *inter alia*, resolve a conflict created by this judge's several decisions and those of other bankruptcy judges within this Circuit.

## II. JURISDICTION AND STANDARD OF REVIEW

We have direct appellate jurisdiction in a bankruptcy proceeding if, as here, the district court certifies that: (1) an order entered in the case involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court, or involves a matter of public importance; (2) the order involves a question of law requiring resolution of conflicting decisions; or (3) an immediate appeal from the order may materially advance the progress of the case or proceeding. *See* 28 U.S.C. § 158(d)(2)(A). In considering this appeal, the

3

facts as found by the bankruptcy court cannot be set aside unless they are clearly erroneous, while its conclusions of law are subject to *de novo* review. *See, e.g., In re Calvert,* 907 F.2d 1069, 1071 (11th Cir. 1990).

## III. ANALYSIS

We must begin our analysis of whether the Creditor's claim is a secured claim to which the hanging paragraph applies by examining the applicable statutory language. Section 506 of the Bankruptcy Code provides in relevant part:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a *secured claim* to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an *unsecured claim* to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property[.]

11 U.S.C. § 506(a)(1) (emphasis added). Prior to 2005, a Chapter 13 debtor could use this section to bifurcate the claim and have the bankruptcy court "cramdown" his or her debt by treating the present value of the collateral as a secured claim, while leaving the remaining portion as an unsecured claim and shared, pro rata, with other unsecured creditors. It seems to be undisputed that Congress viewed this use of "cramdown" as abusive and unfair to car lenders and other lienholders, so it sought to protect "910-claims" by adding the hanging paragraph to section

4

1325(a) of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[2] It provides that "[f]or purposes of paragraph (5), *section 506 shall not apply* to a claim described in that paragraph if the creditor has a [910-claim]." *See* 11 U.S.C. § 1325(a)(*) (emphasis added). The hanging paragraph's reference to "paragraph (5)" is to section 1325(a)(5), which describes the treatment of an "allowed secured claim" provided for by the plan. Section 1325(a)(5) provides three possible options for treatment of such a secured claim. Two of the options, consensual treatment and surrender of the collateral [11 U.S.C. § 1325(a)(5)(A), (C)], are not at issue in this appeal. We are concerned only with the third option of when a debtor elects to retain the vehicle and pay the secured creditor through the Chapter 13 plan. Specifically, we are being called upon to decide if the language "section 506 shall not apply" means, as the bankruptcy court ultimately held, that the Creditor's 910-claim is not a secured claim in all respects and, therefore, is not entitled to post-petition interest.

The bankruptcy court did not set forth the rationale for its decision. Rather, the judge indicated that his decision was based on "the reasons provided" in two

---

[2] A "910-claim" is a purchase money security interest for a debt incurred during the 910-day period prior to filing for bankruptcy relief, secured by a motor vehicle purchased for the personal use of the debtor. It is undisputed by the parties in this case that the Creditor's claim qualifies as a "910-claim" under the hanging paragraph.

of his earlier opinions, *In re Carver,* 338 B.R. 521 (Bankr. S.D. Ga. 2006), and *In re Green,* 348 B.R. 601 (Bankr. M.D. Ga. 2006). In *Carver,* the same judge held:

> [N]othing in the text of the hanging paragraph suggests that Congress intended 910 claims to be treated as secured claims. The only generally applicable definition of a secured claim comes from § 506. By rendering that section inapplicable to 910 claims, Congress expressly eliminated the mechanism by which they could be treated as secured under the Chapter 13 plan.
>
> * * *
>
> The Court is persuaded that the text of the statute plainly prevents 910 claims from being treated as secured under a Chapter 13 plan.

338 B.R. at 525-26. *Carver* recognized that if 910-claims were not secured claims, then they were not entitled to treatment under section 1325(a)(5), so that left the question of "how such claims should be paid under the plan." *Id.* at 527. The judge proceeded to "extrapolate congressional intent" and craft a formula for their treatment. Starting with the premise that Congress did not intend the hanging paragraph to "punish" holders of 910-claims, he fashioned the following rule which he conceded was "awkward and cumbersome:"

> [A] 910 claim must receive the *greater* of (1) the full amount of the claim without interest; or (2) the amount the creditor would receive if the claim were bifurcated and crammed down (i.e., secured portion paid with interest and unsecured portion paid pro rata).

*Id.* at 528 (emphasis in original).[3] *Carver* was decided early among the many cases interpreting and applying BAPCPA's hanging paragraph, and it received criticism from the vast majority of subsequent courts. *See, e.g., In re Solis,* 356 B.R. 398, 405 n.11 (Bankr. S.D. Tex. 2006) (*Carver* "is unpersuasive because (i) it interprets statutory language in a way that reaches absurd results (does anyone really believe that Congress intended in BAPCPA to deny vehicle lenders their previous rights as secured lenders), and (ii) the absurd result paints the court into a box that it can resolve only by stretching § 1111(b) far beyond any reasonable limits."); *In re Brooks,* 344 B.R. 417, 421 and n.6 (Bankr. E.D.N.C 2006) (noting that *Carver* "has been widely cited for its unorthodox approach to the hanging paragraph," but courts have declined to follow its lead); *In re DeSardi,* 340 B.R. 790, 812 (Bankr. S.D. Tex. 2006) ("This Court does not agree with the conclusions in *Carver* [and] will not support a judicially crafted treatment of claims with no basis in the Code."). Indeed, virtually all reported decisions have held the hanging paragraph means *only* that 910-claims cannot be bifurcated into secured and unsecured portions under section 506 and that such claims must be treated as fully secured.

---

[3] This rule is adapted from similar treatment afforded other kinds of claims in section 1111(b), and was the rule that the bankruptcy judge imposed here. The Creditor was awarded the full amount of the claim, but without interest, because that provided a greater distribution than a "cramdown."

In the face of such criticism and disagreement, the judge reasserted his position in *Green*, *supra,* wherein he stated:

> I will continue to follow my decision in *Carver.* It would be more convenient to follow the consensus of opinion if I could do so in good conscience, but I do not believe the majority view correctly follows established principles of statutory construction.

348 B.R. at 611-12.[4]

The issue presented in this case, as just noted, has been litigated extensively in bankruptcy and appellate courts, with those courts uniformly disagreeing with the conclusion reached by the bankruptcy judge. We agree with the majority view. The most recent appellate decision is *In re Jones,* 530 F.3d 1284 (10th Cir. 2008).

---

[4] The bankruptcy judge recognized in *Green* that while "no subsequent decisions have agreed with me as to the payment of a 910 claim, two other cases have concluded that a 910 claim is not a fully secured claim." 348 B.R. at 605. However, after *Green* was decided, those two cases were explicitly disagreed with by appellate courts or reversed. *See In re Wampler,* 345 B.R. 730 (Bankr. D. Kan. 2006), *disagreed with by, In re Wilson,* 374 B.R. 251 (10th Cir. BAP 2007); *In re Taranto,* 344 B.R. 857 (Bankr. N.D. Ohio), *rev'd,* 365 B.R. 85 (6th Cir. BAP 2007). A third case decided post-*Green* that held similarly has likewise been vacated. *See In re Kinsey,* 368 B.R. 888 (Bankr. D. Kan. 2007), *vacated by, In re Jones,* 530 F.3d 1284 (10th Cir. 2008). The Bankruptcy Appellate Panel for the Tenth Circuit has thus observed that "to date, all appellate level cases" have reached a different conclusion than the one reached by the judge in this case. *See Wilson, supra,* 374 B.R. at 255. These cases include appeals to the district courts, *see, e.g., Citifinancial Auto v. Hernandez-Simpson,* 369 B.R. 36 (D. Kan. 2007); appeals to Bankruptcy Appellate Panels, *see, e.g., In re Trejos,* 374 B.R. 210 (9th Cir. BAP 2007); and appeals to circuit court, s*ee, e.g., Jones, supra,* 530 F.3d at 1284. Consequently, *Carver* and *Green* --- and other cases decided by the same bankruptcy judge here, *see In re Zachary D.,* 355 B.R. 920 (Bankr. M.D. Ga. 2006); *In re Williams,* 2006 WL 3703875 (Bankr. M.D. Ga. Sept. 12, 2006); *In re Vail,* 2006 WL 3703877 (Bankr. M.D. Ga. Sept. 12, 2006) --- apparently now stand alone in holding that a 910-claim is not a fully "allowed secured claim" entitling the creditor to interest.

The bankruptcy court in that case had held that 910-claims are not allowed secured claims entitled to post-petition interest under BAPCPA's hanging paragraph. The Tenth Circuit Court of Appeals reversed. It concluded that 910-claims are fully secured under section 1325(a)(5)(B) and that a contrary view "rests on the faulty premise that § 506(a) generally *defines* the term 'allowed secured claim.'" *Id.* at 1289 (citation and quotation marks omitted; emphasis in original). The Court further explained that, "[i]n the absence of express language linking the meaning of 'allowed secured claim' in § 1325(a)(5) to § 506(a), the most natural reading of the phrase is that it describes a claim that is both 'allowed' under the Bankruptcy Code and 'secured' by a lien." *Id.* (citation and quotation marks omitted). And because a 910-claim is not subject to bifurcation, "the holder of such a claim is entitled to the present value of the entire claim under § 1325(a)(5)(B)(ii). Indeed, the language of this provision explicitly requires that property distributions equal the present value of the 'claim,' not the collateral securing the claim." *Id.* The Tenth Circuit concluded that the creditors were "entitled to interest calculated to ensure they receive the present value of their claims." *Id.* We agree with this analysis of our sister circuit and fully adopt it as our own.

Applying this reasoning, the bankruptcy court's Order Confirming Chapter 13 Plan is at odds with the result reached by *Jones* and nearly all other courts

because it does not provide for payment of interest on the Creditor's 910-claim.[5]

## IV. CONCLUSION

For the foregoing reasons, we **VACATE** the bankruptcy court's order confirming the plan and **REMAND** to the bankruptcy court for proceedings consistent with this opinion.

---

[5] This conclusion raises the question of what interest rate should be applied. Because the Creditor only asks for the "prime-plus" rate adopted by *Till v. SCS Credit Corp.,* 541 U.S. 465, 124 S. Ct. 1951, 158 L. Ed. 2d 787 (2004), we need not, and do not, decide whether the *Till* rate of interest *must* apply to 910-claims, as opposed to the contract rate of interest.