RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0010p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

FANNIE L. SHAW,

              *Petitioner-Appellant,*

    *v.*

AURGROUP FINANCIAL CREDIT UNION and
MARGARET A. BURKS,

              *Respondents-Appellees.*

No. 08-3061

_____

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 07-00207—Sandra S. Beckwith, Chief District Judge.

Submitted: October 23, 2008

Decided and Filed: January 9, 2009

Before: BOGGS, Chief Judge; MERRITT and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** David A. Kruer, DEARFIELD, KRUER & COMPANY, Cincinnati, Ohio, for Appellant. Stephen Duane Miles, Dayton, Ohio, for Appellees.

    GRIFFIN, J., delivered the opinion of the court, in which BOGGS, C. J., joined. MERRITT, J. (p. 22), delivered a separate opinion concurring in the result.

_____

## OPINION

_____

    GRIFFIN, Circuit Judge. Debtor-petitioner Fannie L. Shaw appeals the district court's order affirming the bankruptcy court's decision denying confirmation of her Chapter 13 plan. Shaw concedes that her proposed plan did not satisfy the provisions of 11 U.S.C. § 1325(a) but contends that the bankruptcy court could, nevertheless, have exercised

1

discretion and confirmed the plan if it was fair and equitable.  The bankruptcy and district courts held that a plan which does not satisfy the provisions in § 1325(a) cannot be confirmed.  The sole question presented on appeal is whether the provisions in § 1325(a) are mandatory or discretionary.  Because we hold that the provisions in § 1325(a) are mandatory and that a court has no discretion to confirm a plan which does not comply with its provisions, we affirm.

I.

The facts are not disputed.  On March 21, 2005, debtor Fannie Shaw purchased a 2005 Dodge Caravan for personal use.  Appellee Aurgroup Financial Credit Union financed the purchase with a loan at an annual percentage rate of 12.13% secured by the automobile.  On July 21, 2006, or within 910 days of the purchase, Shaw filed a Chapter 13 petition.  At that time, Shaw still owed Aurgroup $23,606.20 on the loan, and Aurgroup filed a proof of claim in that amount.  In her reorganization plan, Shaw proposed to retain ownership of the vehicle and pay $14,890.00 (the value of the vehicle at that time) at the rate of 7.5%.

Aurgroup and the Trustee, appellee Margaret Burks, objected to confirmation of the plan on the basis that it did not comply with 11 U.S.C. § 1325(a)(5) and the "hanging paragraph" following 11 U.S.C. § 1325(a)(9).  Aurgroup contended that it was entitled to be paid in full at the contract rate of interest.

Following a hearing, the Bankruptcy Court for the Southern District of Ohio denied confirmation of the plan.  It held that, although "imprecise," § 1325(a)'s provisions are mandatory, not discretionary, meaning that a plan cannot be confirmed unless it satisfies the provisions of § 1325(a).  Because Shaw conceded that her plan did not satisfy § 1325(a)(5) and the "hanging paragraph" following § 1325(a)(9), the court concluded that the plan could not be confirmed as a matter of law.

On appeal, the district court affirmed.  Relying on decisions[1] from her colleagues, Chief Judge Sandra Beckwith ruled that "§ 1325(a) sets forth mandatory requirements

---

[1]*Sparks v. HSBC Auto Fin.*, No. 1:06-cv-670, 2007 U.S. Dist. LEXIS 51943 (S.D. Ohio July 18, 2007); *Horr v. Jake Sweeney Smartmart, Inc.*, No. 1:07-cv-00010, 2007 U.S. Dist. LEXIS 49063 (S.D. Ohio July 6, 2007).

for plan confirmation and that the bankruptcy court does not have discretion to confirm a plan that does not comply with this section."

Shaw timely appeals.

## II.

While Shaw presents five separate issues on appeal, they are all variations of a single question:  Are the provisions in 11 U.S.C. § 1325(a) mandatory for confirmation of a Chapter 13 bankruptcy plan?  Because the issue is purely a question of law, we review the bankruptcy court's decision de novo. *In re Hurtado*, 342 F.3d 528, 531 (6th Cir. 2003).

Chapter 13 of the Bankruptcy Code permits consumers and businesses with relatively small debts to reorganize their debts. *Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991).  An eligible debtor may submit a plan to the bankruptcy court that "modifies the rights of holders of secured claims or unsecured claims and that provides for the payment of all or any part of any allowed claim." *Id*. (citing 11 U.S.C. § 109(e); quoting 11 U.S.C. § 1322(b)(2) & (b)(6)).  The bankruptcy court is required to confirm

the plan so long as it satisfies the provisions of 11 U.S.C. § 1325(a).[2] *See* § 1325(a)

---

[2]Confirmation of plan

(a) Except as provided in subsection (b), the court shall confirm a plan if –

(1) the plan complies with the provisions of this chapter [11 U.S.C. §§ 1301 et seq.] and with the other applicable provisions of this title [11 U.S.C. §§ 101 et seq.];

(2) any fee, charge, or amount required under chapter 123 of title 28 [28 U.S.C. §§ 1911 et seq.], or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title [11 U.S.C. §§ 701 et seq.] on such date;

(5) with respect to each allowed secured claim provided for by the plan –

(A) the holder of such claim has accepted the plan;

(B) (i) the plan provides that –

(I) the holder of such claim retain the lien securing such claim until the earlier of –

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328 [11 U.S.C. § 1328]; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if –

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder;

(6) the debtor will be able to make all payments under the plan and to comply with the plan;

(7) the action of the debtor in filing the petition was in good faith;

(8) the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation; and

("[T]he court *shall* confirm a plan if –") (emphasis added).

A debtor's proposed plan must accommodate each allowed, secured creditor in one of three ways under § 1325(a)(5): (1) by obtaining the creditor's acceptance of the plan; (2) by surrendering the property securing the claim; or (3) by permitting the creditor to both retain the lien securing the claim and a promise of future property distributions (such as deferred cash payments) whose total "value, as of the effective date of the plan, . . . is not less than the allowed amount of such claim." § 1325(a)(5); *Till v. SCS Credit Corp.*, 541 U.S. 465, 468 (2004). Shaw did not satisfy the first option because Aurgroup objected to the plan, nor did she satisfy the second alternative because she retained the Dodge Caravan. Thus, Shaw's only avenue to comply with § 1325(a) is the third option.

The third option, § 1325(a)(5)(B), is known as the "cramdown option" because it may be enforced over a claim holder's objection.[3] *Id*. at 468-69. Prior to Congress's enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), a Chapter 13 debtor who still owed money on an automobile could, over the creditor's objection, keep the vehicle and "bifurcate" (meaning divide or split) the creditor's fully secured claim into a secured portion and an unsecured portion under § 506(a)(1). *See* 11 U.S.C. § 506(a)(1)[4]; *Nuvell Cred. Co., LLC v. Dean*, 537 F.3d 1315, 1318 (11th Cir. 2008). The debt was secured up to the present value of the vehicle,

---

(9) the debtor has filed all applicable Federal, State, and local tax returns as required by section 1308 [11 U.S.C. § 1308].

[3]In other words, "the court crams down the creditor's throat . . . ." *In re Wright*, 492 F.3d 829, 830 (7th Cir. 2007).

[4]11 U.S.C. § 506(a)(1) provides:

Determination of secured status

(a) (1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title [11 U.S.C. § 553], is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

while the remainder of the debt was unsecured, with payments to be distributed, pro rata, among the debtor's unsecured creditors.[5] *Id*. "[A]s long as the debtor paid the present value of the [vehicle] (the allowed secured claim) over the term of the plan, which could be up to five years[,]" the debtor could retain the vehicle. *In re Dale*, No. H-07-3176, 2008 U.S. Dist. LEXIS 88959, at *11-*12 (S.D. Tex. Aug. 14, 2008). "At the conclusion of the plan, . . . any unpaid portion of the debt would be extinguished pursuant to the provisions of Chapter 13." *Id*. at *12. Ultimately, § 506(a)(1) permitted a debtor to transform an under-secured creditor into an *unsecured* creditor for purposes of pursuing any deficiency. *Id*. at *10.

However, "[i]t seems to be undisputed that Congress viewed this use of 'cramdown' as abusive and unfair to car lenders and other lienholders," so when it enacted BAPCPA in 2005, it added an unnumbered paragraph – commonly referred to as the "hanging paragraph" – to the end of § 1325(a).[6] *Dean*, 537 F.3d at 1318.

As it relates to this case, the "hanging paragraph" applies when: (1) the creditor holds a purchase money security interest securing the debt that is the subject of the claim; (2) the debt was incurred within the 910-day period preceding the date of the filing of the petition; and (3) the collateral for that debt consists of a motor vehicle acquired for the personal use of the debtor.[7] Here, the parties do not dispute that all of the requirements of a 910-claim are satisfied – Aurgroup holds a purchase money security interest securing the debt that is the subject of its claim; Shaw bought the Dodge

---

[5] Bifurcation under § 506 is known as the "stripping" of a creditor's lien. *In re Dale*, No. H-07-3176, 2008 U.S. Dist. LEXIS 88959, at *11, n.9 (S.D. Tex. Aug. 14, 2008).

[6] The "hanging paragraph" following § 1325(a)(9) provides:

> For purposes of paragraph (5), section 506 [11 U.S.C. § 506] shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49 [49 U.S.C. § 30102]) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

[7] A claim which meets the requirements of the "hanging paragraph" is known as a "910-claim." *See Dean*, 537 F.3d at 1318 n.2.

Caravan within 910 days of the filing date; and the collateral for that debt – the Dodge Caravan – is a motor vehicle acquired for personal use.

While the impact of the hanging paragraph on 910-claims has resulted in some debate, "virtually all reported decisions have held [that] the hanging paragraph means only that 910-claims cannot be bifurcated into secured and unsecured portions under section 506 and that such claims must be treated as fully secured." *Dean*, 537 F.3d at 1319. Under this construction of the hanging paragraph, which Shaw, Aurgroup, the Trustee, and the bankruptcy and district courts below have adopted, Shaw would not be permitted to bifurcate the 910-claim as proposed in her plan.

Shaw attempts, however, to *bypass* that obstacle by urging that § 1325(a) in its *entirety*, including the hanging paragraph, are *discretionary* only and that the bankruptcy court could have confirmed her plan if it determined that the plan was fair and equitable. Aurgroup, the Trustee, and the bankruptcy and district courts, however, all construe the provisions in § 1325(a) as *mandatory*, meaning that a bankruptcy court cannot confirm a plan that does not satisfy those criteria.

III.

Shaw advances several theories to support her contention that the bankruptcy court could have, in its discretion, confirmed her proposed plan, even though she concedes that the plan did not comply with § 1325(a). First, she emphasizes the plain language of § 1325(a). She contends that the language "the court shall confirm a plan if – " in § 1325(a) prescribes the circumstances under which the bankruptcy court *must* confirm a proposed plan of reorganization. In her view, § 1325(a) *guarantees* the debtor that her plan will be confirmed by *commanding* the bankruptcy court to confirm it if the plan complies with § 1325(a). In this way, § 1325(a) allegedly functions as a "safe harbor" for the debtor by preventing the bankruptcy court from improperly denying confirmation of a plan that satisfies its statutory criteria.

Shaw observes that § 1325(a) is silent, however, about whether the bankruptcy court *may* confirm plans that do not meet its standards. She emphasizes that the statute's

plain language does not *prevent* a bankruptcy court from confirming plans, such as hers, that are fair and equitable. She also reasons that because § 1325(a) does not contain the words "only if" that are found in its Chapter 11 counterpart, 11 U.S.C. § 1129(a),[8] "Congress sought to give greater flexibility to cases filed under chapter 13 compared to cases under chapter 11 when the Bankruptcy Code was first enacted in 1978 and to keep it that way through every major revision since, including BAPCPA."

Second, Shaw cites to case law to support her characterization of § 1325(a) as discretionary. She relies heavily on *In re Szostek*, 886 F.2d 1405 (3d Cir. 1989), where the Third Circuit explained:

> If the provisions of § 1325(a)(5) are mandatory, as Kissell contends, then a plan cannot be confirmed if it does not meet the requirements of that section. We must determine whether § 1325(a)(5)(B)(ii) is mandatory, as Kissell contends, or whether the section is discretionary, i.e., it guarantees confirmation if a plan comports with the statutory provisions, but does not mandate that the provisions be met in order for confirmation to occur.
>
> We note at the outset that the Code section which explicitly contains mandatory requirements for confirmation of a debtor's Chapter 13 plan is 11 U.S.C. § 1322, which unequivocally states "the plan shall" do three things. Section 1322 provides in relevant part:
>
> > (a) The plan shall –
> >
> > (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
> >
> > (2) provide for the full payment, in deferred cash payments of claims entitled to full priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claims; and
> >
> > (3) if the plan classifies claims, provide the same treatment for each claim within a particular class.

---

[8] 11 U.S.C. § 1129(a) provides that "[t]he court shall confirm a plan only if all of the following requirements are met: . . . ."

11 U.S.C. § 1322(a). By comparison, the language of § 1325(a) states that a "court shall confirm a plan if" certain things occur. However, it does not state "only if" the described events occur. Thus, the logical interpretation is that if the conditions of § 1325(a) occur, the court must confirm the plan. On the other hand, if the conditions of § 1325(a) are not met, although the requirements of § 1322 are fulfilled, the court has the discretion to confirm the plan. If Congress had intended for § 1325(a) to be mandatory, it could have included that requirement with the requirements already listed in § 1322.

Review of a comparable bankruptcy section, one dealing with the confirmation of chapter 11 plans, supports the conclusion that § 1325(a) is not mandatory. The text of 11 U.S.C. § 1129 specifically states that "The court shall confirm a plan *only* if all of the following requirements are met" . . . . (Emphasis added.) Thus, the distinction between § 1322 and § 1325(a) and the inclusion of the "only if" language in § 1129, which is absent from § 1325(a), show an unmistakable intent on the part of Congress that a plan may be confirmed even if it does not comport with the requirements of § 1325(a)(5).

*Szostek*, 886 F.2d at 1411.

Shaw also quotes from *In re Britt,* 199 B.R. 1000 (Bankr. N.D. Ala. 1996), in which the Bankruptcy Court for the Northern District of Alabama, relying on *Szostek*, held:

Section 1325(a) need not be satisfied for the Court to confirm a plan. Section 1325(a) is a "safe harbor" provision by which the debtor can require the Court to confirm a plan which satisfies all its provisions. It provides the Court "shall confirm a plan if," in addition to satisfying subsection (b), the plan complies with the provisions of each of the six paragraphs of subsection (a). Consequently, the "court is required to confirm if [the] six requirements are met." H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977) p. 430. *See also*, S. Rept. No. 95-989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) p. 142. Unlike § 1129, which allows confirmation "only if" all of its requirements are met, § 1325(a) does not impose mandatory requirements. *In re Szostek*, 886 F.2d 1405, 1412 (3d Cir. 1989). The Court has discretion, therefore, to confirm a plan which satisfies §§ 1322 and 1325(b) but does not satisfy § 1325(a). *Id*.

*Britt*, 199 B.R. at 1006-07.

Shaw also relies on, but does not discuss, the following cases: *In re Escobedo*, 28 F.3d 34 (7th Cir. 1994) (holding that a plan under Chapter 13, although confirmed, was invalid because it failed to comply with the mandatory provisions of 11 U.S.C.

§ 1322(a)(2) requiring full payment of all claims entitled to priority); *In re Burgess*, 143 F. App'x 692 (7th Cir. 2005) (unpublished) (rejecting creditor's attempt to invalidate a confirmed plan because creditor failed to properly and timely object to confirmation and because compliance with § 1325(a) is, under *Szostek*, not mandatory for confirmation); *In re Averhart*, 372 B.R. 441, 444 (Bankr. E.D. Wis. 2007) ("This court joins with *Szostek* and other cases which hold that § 1325(a) is not a mandatory provision for confirmation."); *In re Wampler*, 345 B.R. 730 (Bankr. Kan. 2006) (relying on *Szostek* to conclude that § 1325(a) is discretionary); *In re Siegfried*, 114 B.R. 358 (Bankr. N.D.N.Y. 1990) (holding that § 1325(a) is discretionary, based on 5 COLLIER ON BANKRUPTCY P. 1322.01[1] (15th ed. 1989), which cited § 1322(a) as the sole mandatory provision of the Code regarding Chapter 13 plans, and other decisions, including *Szostek*).

Third, Shaw emphasizes the canon of statutory interpretation that Congress is presumed to be aware of existing case law pertinent to the legislation it enacts. *See*, *e.g.*, *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 185 (1988). She contends that because Congress did not modify the language in § 1325(a) after *Szostek,* it intended to permit bankruptcy courts to confirm Chapter 13 plans that do not comply with § 1325(a).

Fourth, Shaw asserts that pre-BAPCPA decisions holding directly, or suggesting in dicta, that § 1325(a) is mandatory are not persuasive because those cases were not confronted with the hanging paragraph. According to Shaw, the hanging paragraph imposes unfair burdens on debtors that did not exist pre-BAPCPA.

Fifth, Shaw argues that a construction of § 1325(a) as mandatory would unfavorably erode the finality of the confirmation order. In support of that contention, Shaw cites our decision in *In re Ruehle*, 412 F.3d 679 (6th Cir. 2005). In *Ruehle*, we held that the portion of a Chapter 13 plan discharging the debtor's student loans by declaration, although it had been confirmed, was nevertheless void because the debtor failed to initiate an adversary proceeding alleging undue hardship, as required by 11 U.S.C. § 523(a)(8) and FED. R. BANKR. P. 7001(6), and because the creditor's due

process rights had been violated when it received no notice or process concerning the discharge. *Id*. at 681.

According to Shaw, "*Ruehle* made clear that when something is mandatory under the bankruptcy code or bankruptcy rules, then a confirmation order that purports to do otherwise is void and will be vacated upon motion." If § 1325(a) were deemed mandatory and *Ruehle*'s holding applied, Shaw asserts that a debtor's failure to comply with any requirement in § 1325(a) could result in a determination that the plan, although confirmed, is nevertheless void. "[U]nder the logic of *Ruehle*," she reasons, " any creditor could seek to have the confirmation of the plan, years after confirmation, vacated on the basis of it being void[,]" thus undermining finality.

Sixth, Shaw relies on BAPCPA's legislative history. She asserts that the initial legislative proposals did not prevent bifurcation in her circumstance.

Finally, Shaw suggests that granting bankruptcy courts discretion to confirm plans that do not satisfy the provisions in § 1325(a) would not be unjust to creditors. "If a debtor seeks to keep an asset that is unnecessary for an effective reorganization, such as a pleasure boat as an extreme example, it is hard to imagine how a Court could grant confirmation without abusing its discretion." "Simply stated, it is not always inherently fair or inequitable to confirm a plan that recognizes the economic reality of the creditor's secured status by paying the fair value of a particular motor vehicle to the creditor holding a lien upon it." She then contends, without explaining, that a discretionary construction of § 1325(a) would actually benefit creditors and advance Congress's intent of treating affected creditors "more fairly." "It is a balanced result given the historic preference of chapter 13 bankruptcy and the concerns of Congress as to debtors gaming the bankruptcy system." Further,

> [i]t avoids the absurd result of rewarding the motor vehicle lending
> industry with huge windfalls that would otherwise result from an
> absolute elimination of bifurcation on 910-claims . . . . With such a view,
> the affected creditor still has an allowed secured claim that is still subject
> to bifurcation but only when the Court, given the discretion clearly given
> to it by Congress for the reasons stated above and the particular

circumstances of the case, believes it would be fair and equitable to do so.

IV.

At the outset, we acknowledge that 11 U.S.C. § 1325(a) is poorly worded. *See* Henry E. Hildebrand, III, *Impact of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 on Chapter 13 Trustees*, 79 AM. BANKR. L.J. 373, 386 n.65 (Spring 2005) ("Though it appears that the intent of the hanging paragraph is to preclude the claim splitting or 'cramdown' that is embodied in 506(a), the means by which such restriction was drafted is confusing, at best."). Nevertheless, we have consistently treated the provisions in § 1325(a) as mandatory requirements for confirmation. *See In re Nichols*, 440 F.3d 850, 857 (6th Cir. 2006) (noting that a debtor may cure a post-confirmation default by modifying the plan as long as the modified plan conforms with the "requirements" of § 1325(a)); *In re Adkins*, 425 F.3d 296, 300 (6th Cir. 2005) (stating that § 1325(a)(5)(B) "*mandates* that a secured claim is fixed in amount and status and must be paid in full once it has been allowed"; "a post-confirmation surrender and subsequent reclassification is an attempt to bifurcate a claim that has already been classified as fully secured, and thus would negate the *requirement* in section 1325(a)(5)(B)(ii) that a plan is not to be confirmed unless the property to be distributed on account of a claim is not less than the allowed amount of the claim.") (emphasis added); *In re Alt*, 305 F.3d 413, 419 (6th Cir. 2002) (treating the provisions of § 1325(a) as mandatory); *In re Nolan*, 232 F.3d 528, 533 (6th Cir. 2000) (same); *In re Glenn*, No. 98-5128, 1999 U.S. App. LEXIS 847, at *5 (6th Cir. Jan. 20, 1999) (unpublished) ("Because the value of property to be distributed under the plan is not less than the value of City Bank's claim, the *requirements* of § 1325(a)(5)(B) have been satisfied"; "Section 1325(a)(6) *requires* that the debtor be able to make all payments under the plan and to comply with the plan.") (emphasis added); *In re Fishell*, No. 95-1637, 1997 U.S. App. LEXIS 8394, at *13 (6th Cir. Apr. 16, 1997) (unpublished) (characterizing § 1325(a)(3) as a good faith "requirement"); *In re Shortridge*, No. 93-2558, 1995 U.S. App. LEXIS 32890, at *6-7 (6th Cir. Aug. 31, 1995) (unpublished) (same); *Lawson v. BancBoston Mort. Corp.*, No. 90-6441, 1991 U.S. App. LEXIS 19035, at *6-*7 (6th Cir. Aug. 8,

1991) (unpublished) ("[N]either [the district court, nor the bankruptcy court,] addressed whether the debtors' proposed plan met the *requirements* of 11 U.S.C. § 1325(a), which *requires* the bankruptcy court to find, *inter alia*, that the plan is feasible and proposed in good faith.") (emphasis added); *Hardin v. Caldwell*, 897 F.2d 529, n.6 (6th Cir. 1990) (stating in dicta that "[i]n order for a debtor to obtain judicial confirmation of a Chapter 13 reorganization plan, the plan *must conform with the requirements* of 11 U.S.C. § 1325 . . . .") (emphasis added); *In re Hardy*, 755 F.2d 75, 78 (6th Cir. 1985) (affirming decision denying confirmation of a plan because plan failed to satisfy the "statutory requirement" in § 1325(a)(4)). In *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir. 1982), we observed that:

> [s]ection 1325(a)(5)(B) seems to *require* the Bankruptcy Court to assess interest on the secured claim for the present value of the collateral (if it is not to be paid immediately) in order not to dilute the value of that claim through delay in payment. In effect the law *requires* the creditor to make a new loan in the amount of the value of the collateral rather than repossess it, and the creditor is entitled to interest on his loan.

*Id*. at 429 (emphasis added).

> Most recently, in *In re Long*, 519 F.3d 288 (6th Cir. 2008), we stated:

> The hanging paragraph eliminates the cramdown occurring under § 1325(a)(5)(B) by eliminating bifurcation under § 506. Without § 506, creditors falling within the scope of the hanging paragraph are fully secured so that when a debtor elects to retain the collateral, the debtor must propose a plan that will pay the full amount of the claim.

> . . .

> Based upon the legislative history, there is little doubt that the "hanging-sentence architects intended only good things for car lenders and other lienholders." Keith M. Lundin, CHAPTER 13 BANKRUPTCY, 3d ed. 451.5-1 (2000 & Supp. 2007-1) . . . .

*Id*. at 294.

Our construction of § 1325(a) as imposing mandatory requirements for plan confirmation is consistent with several Supreme Court decisions suggesting the same. *See Till v. SCS Credit Corp.*, 541 U.S. 465, 468 (2004) ("To qualify for court approval under Chapter 13 of the Bankruptcy Code, an individual debtor's proposed debt

adjustment plan *must* accommodate each allowed, secured creditor in one of three ways [under § 1325(a)(5)] . . . .") (emphasis added); *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 956 (1997) ("To qualify for confirmation under Chapter 13, the Rashes' plan *had* to satisfy the requirements set forth in 1325(a) of the Code.") (emphasis added); *Johnson v. Home State Bank*, 501 U.S. 78, 87-88 (1991) ("A bankruptcy court is authorized to confirm a plan *only if* the court finds" that the requirements of 1325(a) have been satisfied) (emphasis added).

Shaw cites no Supreme Court or Sixth Circuit decision holding or even suggesting that the provisions in § 1325(a) are discretionary. Other circuits have also held that the provisions in § 1325(a) are mandatory. The most recent decision so holding is *In re Jones*, 530 F.3d 1284 (10th Cir. 2008), in which the Tenth Circuit stated:

> We begin by acknowledging that § 1325(a) does not expressly state that a court must confirm a plan only if certain conditions occur; rather, it states that "the court shall confirm a plan if" these conditions occur. According to the debtors, this language permits confirmation of a plan that does not satisfy the conditions because the statute does not direct the court to confirm a plan only if the conditions occur. Read in context, however, the conditions specified in § 1325(a) are clearly mandatory requirements. *See Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme."). For example, § 1325(a)(3) permits confirmation when "the plan has been proposed in good faith and not by any means forbidden by law." If we were to adopt the debtors' reading of the statute, a bankruptcy court would have the discretion to confirm a plan even if it were proposed in bad faith or by illegal means.
>
> Given this result, it is not surprising that we have repeatedly treated the conditions set forth in § 1325(a) as mandatory. Moreover, in analyzing questions arising under § 1325(a), the Supreme Court has described the statutory conditions as mandatory requirements.
>
> Furthermore, a reading that fails to recognize the mandatory nature of § 1325(a) would be in conflict with § 1329, the section governing modification of a plan after confirmation. This section explicitly states that "the requirements of section 1325(a) . . . apply to any modification" under § 1329. § 1329(b)(1) (emphasis added). To hold that the conditions set forth in § 1325(a) are not requirements for confirmation would clearly "violate[] the general maxim that the Bankruptcy Code and

Rules be construed so that their provisions are harmonious with each other."

We therefore hold that the conditions set forth in § 1325(a) are requirements the debtor must satisfy to qualify a Chapter 13 plan for confirmation. As a result, when a secured creditor objects to confirmation because the plan does not comply with § 1325(a)(5)–as is the case here– the bankruptcy court may not confirm the plan unless it meets the requirements of that subsection.

As we have previously indicated, however, if a secured creditor fails to object to confirmation, the creditor will be bound by the confirmed plan's treatment of its secured claim under § 1325(a)(5). This is because the failure to object constitutes acceptance of the plan. And a creditor's acceptance of a Chapter 13 plan is one way to satisfy the requirements of § 1325(a)(5) with respect to that creditor's allowed secured claim. *See* § 1325(a)(5)(A) (providing that a plan qualifies for confirmation with respect to an allowed secured claim when the holder of such claim accepts the plan). In short, when the holder of an allowed secured claim does not object, the court may interpret this silence as acceptance under § 1325(a)(5)(A); under these circumstances, the plan need not meet the requirements set forth in § 1325(a)(5)(B), including the present-value requirement.

The decision cited by the debtors, *In re Szostek*, essentially stands for this proposition–that is, that a creditor's failure to object constitutes acceptance and permits confirmation even if the plan does not treat an allowed secured claim in accordance with § 1325(a)(5)(B). *See In re Szostek*, 886 F.2d at 1414. Citing our decision in *In re Ruti-Sweetwater*[, *Inc.*, 836 F.2d 1263, 1266-67 (10th Cir. 1988),] the Third Circuit rejected a creditor's challenge to a Chapter 13 plan, holding that the creditor accepted the plan when it "failed to object timely to the plan's confirmation." *Id.* (citing *In re Ruti-Sweetwater*, 836 F.2d at 1263). This holding is consistent with our prior case law and our decision today that the conditions regarding allowed secured claims in § 1325(a)(5) are mandatory: if the creditor objects (i.e., does not accept the plan under § 1325(a)(5)(A)), the plan must meet the requirements of § 1325(a)(5)(B).

Although *In re Szostek* contains broader language that suggests the provisions of § 1325(a) are not mandatory, see 886 F.2d at 1412, the court expressly limited its holding to the facts of the case, discussing at length the creditor's failure to object to confirmation, *id.* at 1413-14. We therefore read the court's holding narrowly. To the extent the court in *In re Szostek* suggested that the statutory conditions are not mandatory, we disagree. They are requirements for confirmation of a plan.

> Here, the creditors objected to confirmation of the plans. Because they did not accept the plans, see § 1325(a)(5)(A), and the debtors did not surrender the vehicles, see § 1325(a)(5)(C), the plans had to satisfy the requirements of § 1325(a)(5)(B)(ii) by proposing property distributions equaling the present value of the claims. Because the plans do not provide for the payment of interest on the claims, they fail to satisfy the statute's present-value requirement, and the bankruptcy court erred in confirming the plans over the creditors' objections.

*Id*. at 1290-92 (citations and footnote omitted).

Likewise, in *In Re Barnes*, 32 F.3d 405 (9th Cir. 1994), a pre-BAPCPA decision, the Ninth Circuit rejected *In re Szostek* and held that the provisions in § 1325(a) are mandatory:

> It is possible to distinguish *In re Szostek* on the ground that the creditor in that case did not timely object to the plan, whereas the Creditors here did. But this distinction does not account for the broad language [of *In re Szostek*].

> We have not heretofore considered whether the language of § 1325(a)(5)(B)(ii) is a mandatory requirement for confirmation of a Chapter 13 plan of reorganization. We have considered, however, the question whether the good faith requirement of § 1325(a)(3) is such a mandatory requirement. In *Chinichian v. Campolongo*, 784 F.2d 1440 (9th Cir. 1986), we held it was. We reasoned this was so because a bankruptcy court has jurisdiction to revoke a plan if the plan was not filed in good faith. *Id*. at 1442. We also stated: "For a court to confirm a plan, each of the requirements of section 1325 must be present and the debtor has the burden of proving that each element has been met." *Id*. at 1443-44.

> We conclude that, like the requirement of 11 U.S.C. § 1325(3), the requirement of § 1325(a)(5)(B)(ii) is mandatory. The bankruptcy court cannot confirm a plan of reorganization that does not comply with this requirement. Here, the value of the property to be distributed during the term of the five-year plan on account of the allowed secured claim is $25,703.25. This is less than the allowed amount of the secured claim, $43,000 plus interest, and the Debtors have not surrendered the property securing the claim. The bankruptcy court erred in confirming the plan.

*Id*. at 407 (citations omitted).

In *In re Bateman*, 331 F.3d 821, 829 n.7 (11th Cir. 2003), the Eleventh Circuit stated in dicta that the question of whether the provisions in § 1325(a) are mandatory or

discretionary "*appears to be settled* by [the Supreme Court's decision in] *Assocs. Commercial Corp. v. Rash*." (Emphasis added.) More recently, the Eleventh Circuit's decision in *In re Dean*, 537 F.3d 1315 (11th Cir. 2008) also strongly suggests a mandatory construction of § 1325(a) because *Dean* "fully adopt[ed]" the Tenth Circuit's holding in *Jones* that 910-claims are fully secured and are not subject to bifurcation. *Id.* at 1320. Further, the Fifth Circuit in *In re Simmons*, 765 F.2d 547 (5th Cir. 1985) characterized § 1325(a)(5) as "one of the six *prerequisites* to confirmation of a Chapter 13 plan" and held that "because the *requisites* of section 1325(a)(5) were not satisfied with regard to Simmons' proposed Chapter 13 plan, it was erroneously confirmed." *Id.* at 553-54 (emphasis added).

Numerous district and bankruptcy courts outside the Fifth, Ninth, Tenth, and Eleventh Circuits, including courts within this circuit, have also held, suggested, or assumed that the provisions in § 1325(a) are mandatory.[9] Based on the sheer weight of authority, *Szostek* and the cases which rely upon it are in the minority. Interestingly, we note that, although the Eastern District of Pennsylvania is bound by *Szostek*, its decision in *In re Haas*, 203 B.R. 573 (E.D. Pa. 1996) distinguished it. *In re Haas* held that "[s]ince compliance with § 1325(a)(5)(B)(ii) is *mandatory* and the Creditor objected to

---

[9] *See, e.g., Sparks v. HSBC Auto Fin.*, No. 1:06cv670, 2007 U.S. Dist. LEXIS 51943, at *14-*15 (S.D. Ohio July 18, 2007) (holding that § 1325(a) is mandatory and that the general powers of the court codified in 11 U.S.C. § 105(a) do not permit a court to confirm a plan that does not satisfy § 1325(a)); *Horr v. Jake Sweeney Smartmart, Inc.*, No. 1:07-cv-00010, 2007 U.S. Dist. LEXIS 49063, at *12 (S.D. Ohio July 6, 2007) ("In the face of this precedent, the Court is not inclined to follow the language in *Szostek* finding that Bankruptcy Courts have the discretion to approve a plan that does not meet the requirements of § 1325(a)."); *In re Ezell*, 338 B.R. 330, 342 (Bankr. E.D. Tenn. 2006) (concluding that the "Anti-Cramdown Paragraph, as mandated by its terms," renders a creditor whose claim falls within its scope "fully secured"); *In re Soards*, 344 B.R. 829, 831 (Bankr. W.D. Ky. 2006) ("Under BAPCPA, vehicles purchased within the 910 days preceding the filing of the petition may no longer be bifurcated into secured and unsecured claims, but rather *must* be treated as fully secured.") (emphasis added); *In re Fleming*, 339 B.R. 716, 721 (Bankr. E.D. Mo. 2006) ("In order to be confirmed, a Chapter 13 plan *must provide* one of three options to secured creditors" under § 1325(a)(5)) (emphasis added); *In re Robinson*, 338 B.R. 70, 73-74 (Bankr. W.D. Mo. 2006) (noting that the parties do not dispute that the creditors of 910-claims "are entitled to secured claims for the total amount of their claims, regardless of the value of the respective vehicles, and the Debtor cannot bifurcate them."); *In re Scruggs*, 342 B.R. 571, 575 (Bankr. E.D. Ark. 2006) (holding that a 910-claim is fully secured and requires that interest be added to the payment to arrive at the present value of the claim); *In re Shaw*, 341 B.R. 543, 544 (Bankr. M.D. N.C. 2006) (stating that § 1325(a) contains general "*requirements* (i.e. that the plan be proposed in good faith) and *mandates* specific treatment of certain creditors") (emphasis added); *In re Brooks*, 344 B.R. 417, 419 (E.D. N.C. 2006) ("Section 1325(a) is the provision in the Code that sets forth the *requirements* for confirmation of a Chapter 13 plan.") (emphasis added); *In re Johnson*, 337 B.R. 269 (Bankr. M.D. N.C. 2006) (hanging paragraph "*prevents* a debtor from paying less than the full contract amount if the debtor chooses to retain the vehicle") (emphasis added); *In re Pearson*, 10 B.R. 189, 194 (Bankr. E.D.N.Y. 1981) ("Before a court may confirm a Chapter 13 plan, it must find" that 1325(a)(5)(B) has been satisfied.).

the Plan prior to confirmation, the bankruptcy court was not permitted to confirm the Plan over [the] Creditor's objection." (Emphasis added.) *Id*. at 576.

After a thorough analysis, we conclude that Shaw's reliance on two decisions from the Seventh Circuit, *In re Burgess* and *In re Escobedo*, is misplaced. The *Burgess* court relied on *Escobedo* to support its holding that § 1325(a) is discretionary, explaining that:

> Taylor asserts that § 1325(a)(4), like § 1322(a)(2), should be considered a mandatory provision, such that we are entitled to disregard the time limits established for revoking a confirmation order.
>
> Unfortunately for Taylor, what *Escobedo* giveth, *Escobedo* taketh away. In *Escobedo*, we distinguished the mandatory nature of § 1322(a)(2) from the discretionary requirements of § 1325(a). 28 F.3d at 35. Our analysis in *Escobedo* relied on the analysis of the Third Circuit in *In re Szostek*, 886 F.2d 1405, 1411 (3d Cir. 1989). *Szostek* found § 1322(a) mandatory for all plans because that provision contained unequivocal language that "the plan shall" satisfy three requirements. *See id*. This unequivocal language meant that "a bankruptcy court lacks the authority to confirm any plan unless it" complies with the provisions of § 1322(a). *Escobedo*, 28 F.3d at 35; *Szostek*, 886 F.2d at 1411. *Szostek* then considered the language of § 1325(a), which provides that "a court shall confirm a plan if certain things occur." *Szostek*, 886 F.2d at 1411. The proper interpretation of this provision is that if the requirements of § 1325(a) are met, the bankruptcy court must confirm the plan, but if they are not met (but § 1322(a) is satisfied), the bankruptcy court still has the discretion to confirm the plan. *See id*. Section 1325(a), therefore, is not mandatory, but only discretionary. As the Third Circuit noted, "if Congress had intended for § 1325(a) to be mandatory, it could have included that requirement with the requirements already listed in § 1322." *Id*.

*Burgess*, 144 F. App'x at 694-95.

The *Burgess* court's reliance on *Escobedo*, however, was erroneous. *Escobedo* held only that confirmation of a debtor's plan that did not comply with § 1322(a)(2) is "nugatory" and "properly dismissed." *Escobedo*, 28 F.3d at 35. *Escobedo* thus stands for the sole proposition that the provisions in § 1322(a)(2) are mandatory. *Id*. *Escobedo* did not address § 1325(a); rather, it merely noted, as an *aside*, that "while the provisions of § 1325(a)(5) *may be* discretionary[,] the requirements of § 1322(a)(2) are mandatory."

*Id.* (emphasis added). *Escobedo*'s purpose in noting the *possible* discretionary nature of §1325(a)(5) was simply to *emphasize* that the statute before it – § 1322(a)(2) – was *undoubtedly* mandatory. Therefore, we do not find *Burgess*, an unpublished, non-binding decision in the Seventh Circuit, to be persuasive.

Shaw's reliance on *In re Britt*, 199 B.R. 1000 (Bankr. N.D. Ala. 1996), a bankruptcy court decision from the Northern District of Alabama, is also misplaced. As we previously noted, the Eleventh Circuit's decisions in *In re Dean* and *In re Bateman* suggest a strong inclination toward a mandatory construction of § 1325(a).

The specific arguments Shaw advances in support of a discretionary construction of § 1325(a) are unavailing. Shaw's contention that Congress implicitly approved *Szostek*'s holding when it enacted BAPCPA without modifying the language in § 1325(a) is without merit. At the time Congress enacted BAPCPA in 2005, it had been eleven years since the Ninth Circuit decided *Barnes*. In rejecting *Szostek*, *Barnes* created an unambiguous circuit split. Further, as the cases cited in this opinion demonstrate, numerous courts, including the Supreme Court, as well as our own, suggested or operated under the assumption that the provisions in § 1325(a) were mandatory before BAPCPA's enactment.

Shaw characterizes the pre-BAPCPA decisions addressing § 1325(a) as being "of limited relevance." That argument is self-defeating because Shaw heavily relies on *Szostek*, a case decided *before* BAPCPA's enactment. Further, although Shaw protests the apparent "harshness" of the hanging paragraph on debtors, it is the Congress, not the courts, which makes bankruptcy law. Shaw's construction of § 1325(a) as discretionary would contravene the hanging paragraph and Congress's intent to protect creditors of 910-claims. *See* David Gray Carlson, *Cars and Homes in Chapter 13 After the 2005 Amendments to the Bankruptcy Code*, 14 AM. BANKR. INST. L. REV. 301, 346 (Winter 2006) (characterizing *Szostek*'s holding as an "extraordinary and quite unnecessary holding" because it "all but abolishes the hanging paragraph."). Accordingly, Shaw's dispute is with Congress, not with the courts.

Shaw provides no support for her contention that a mandatory construction of § 1325(a) would, in conjunction with our decision in *Ruehle*, erode the finality of the confirmation order. In fact, granting judges discretion to confirm proposed plans under Chapter 13 would introduce needless uncertainties and inconsistencies in the confirmation process. Congress enacted BAPCPA precisely so that judges would have *less*, not *more*, discretion under the Bankruptcy Code. *See* Hon. Keith M. Lundin, *Ten Principles of BAPCPA: Not What Was Advertised*, 24-7 A.B.I.J. 1, 69 (Sept. 2005) ("BAPCPA is packed with provisions intended to 'reduce the discretion' of bankruptcy judges.").

Finally, Shaw's argument that the legislative history supports her interpretation of § 1325(a) as discretionary is equally baseless. While several courts have observed that the legislative history of § 1325(a) is not particularly helpful in distilling Congress's intent, *see, e.g.*, *In re Brady*, 86 B.R. 166, 169 (Bankr. D. Minn. 1988) ("While it is always risky trying to determine congressional intent, it is even more perilous in the Bankruptcy Code, since there are virtually no legislative history to speak of and that which does exist tends to be unenlightening. The committee reports and comments that do exist on § 1322 and § 1325 do nothing more than reiterate the language of the two sections themselves"), and *In re Ezell*, 338 B.R. 330, 341 (Bankr. E.D. Tenn. 2006) (noting that statements of Congress's intent in the legislative history of § 1325(a)(5) "basically mirror the statutory language" and that "there is no further clarification"), it is apparent from the House of Representatives report accompanying BAPCPA that Congress sought to *protect* secured creditors of 910-automobiles:

> *Protections* for Secured Creditors. S. 256's *protections* for secured creditors include a *prohibition* against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's personal use. Where the collateral consists of any other type of property having value, S. 256 *prohibits* bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case. The bill clarifies current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing. In addition, the bill terminates the automatic stay

with respect to personal property if the debtor does not timely reaffirm the underlying obligation or redeem the property. S. 256 also specifies that a secured claimant retains its lien in a chapter 13 case until the underlying debt is paid or the debtor receives a discharge.

H.R. Rep. No. 109-031, Part 1, at 17 (2005) (emphasis added). Notably, the proposed legislation preceding BAPCPA contained the following headings and sub-headings: "SEC. 302. FAIR TREATMENT OF SECURED CREDITORS UNDER CHAPTER 13"; "(a) RESTORING THE FOUNDATION FOR SECURED CREDIT," and "SEC. 306. GIVING SECURED CREDITORS FAIR TREATMENT IN CHAPTER 13 . . . ."

## V.

For the reasons stated, we hold that the provisions in 11 U.S.C. § 1325(a) are mandatory requirements for confirmation of a proposed plan under Chapter 13 of the Bankruptcy Code and that a bankruptcy court has no discretion to confirm a plan which does not comply with those requirements. Because Shaw conceded that her proposed plan did not comply with the hanging paragraph following § 1325(a), the bankruptcy court could not, as a matter of law, confirm the plan. Accordingly, we affirm.

---

## CONCURRING IN THE RESULT

---

MERRITT, Circuit Judge, concurring in the result.  I have previously set out my views with respect to the "hanging paragraph" and the handling of auto retention cases in Chapter 13 proceedings, and I adhere to the views set out there which lead to the affirmance of the judgment of the Bankruptcy Court in this case.  *See In re:  Long*, 519 F.3d 288 (6th Cir. 2008).