NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0024n.06

No. 20-1376

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: TAMARA CHAMBERS, | ) | |
| Debtor, | ) | **FILED** |
| | ) | Jan 12, 2021 |
| _____ | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| THOMAS W. MCDONALD, JR., Trustee, | ) | |
| Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| TAMARA CHAMBERS; DORT FEDERAL | ) | |
| CREDIT UNION, | ) | |
| Appellees. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, McKEAGUE, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Chapter 13 of the Bankruptcy Code affords an individual debtor with a regular income stream the opportunity to resolve her debts through a structured repayment plan. Facing mounting debt, Tamara Chambers availed herself of that opportunity. Among her outstanding obligations was a $13,000 car loan financed by Dort Federal Credit Union (DFCU). As part of Chambers's confirmed repayment plan, the bankruptcy court permitted Chambers to repay the loan directly to DFCU at the 15% interest rate included in the original loan agreement.

The Trustee challenges that arrangement in two respects. One, the Trustee argues that utilizing the original interest rate violates the "prime-plus" formula for interest calculations adopted in *Till v. SCS Credit Corp.*, 541 U.S. 465, 480 (2004). *Till*, however, is inapplicable when a debtor's Chapter 13 plan proposes to pay a creditor in accordance with the terms of the original

contract. Two, the Trustee contends that allowing Chambers to make direct payments to DFCU violates the bankruptcy code and a local bankruptcy rule. But the Trustee failed adequately to make that objection to Chambers's plan before the bankruptcy court. We thus affirm the district court, which itself affirmed the Bankruptcy Court's Confirmation Order. *See Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 411 (6th Cir. 2013) (explaining that in an appeal from a district court's judgment reviewing a bankruptcy court's decision, "we review the bankruptcy court's orders directly").

## I.

Before a bankruptcy court may confirm a Chapter 13 debtor's repayment plan, it must conclude that the plan complies with the requirements listed in 11 U.S.C. § 1325(a). *See Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 449, 457–58 (6th Cir. 2009). Those considerations range from ensuring that the plan was "proposed in good faith," 11 U.S.C. § 1325(a)(3), and complies "with the provisions of this chapter," 11 U.S.C. § 1325(a)(1), to ensuring that the debtor has "filed all applicable Federal, State, and local tax returns," 11 U.S.C. § 1325(a)(9).

Relevant here are two other requirements in § 1325(a), which together address how the claims of secured creditors are to be resolved in a debtor's repayment plan. One governs the specific treatment of each "secured claim provided for by the plan," 11 U.S.C. § 1325(a)(5), the other more broadly requires the debtor to "be able to make all payments under the plan and to comply with the plan," 11 U.S.C. § 1325(a)(6). Where the payments under a debtor's plan include the repayment of secured debt, § 1325(a)(5) requires the debtor to (1) obtain "the creditor's acceptance of the plan"; (2) surrender "the property securing the claim"; or (3) provide "the creditor both a lien securing the claim and a promise of future property distributions (such as deferred cash payments) whose total 'value, as of the effective date of the plan, . . . is not less than

the allowed amount of such claim.'" *Till*, 541 U.S. at 468 (citing 11 U.S.C. § 1325(a)(5)(A)-(C)). At issue here is the third option, one that has come to be known in bankruptcy circles as a "cram down," as it can be enforced even without the claim holder's consent. *Id.* at 468–69; *see also Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 957 (1997) (noting the term "cram down" refers to a confirmation of a Chapter 13 plan over the objection of the creditor). A Chapter 13 cram down occurs when an individual debtor, over a creditor's objection, proposes a plan by which the encumbered property would be retained by the debtor and the secured creditor's rights modified by changing one or more previously agreed to contract terms. *See* 11 U.S.C. § 1325(a)(5)(B); *Till*, 541 U.S. at 476. Those modifications, while unilateral, nonetheless bind the creditor. *See, e.g.*, *In re Pryor*, 341 B.R. 648, 651 (Bankr. C.D. Ill. 2006) ("Any plan that modifies a secured creditor's rights over the creditor's objection is a cram down . . . ."); *DaimlerChrysler Servs. N. Am. LLC v. Taranto (In re Taranto)*, 365 B.R. 85, 90 (B.A.P. 6th Cir. 2007) (holding that a debtor's plan to accelerate payments and pay the contract rate of interest constitutes a cram down).

A. One item that the debtor does not unilaterally control in a cram down scenario is the applicable interest rate on future installment payments. In the case of a cram down, the applicable interest rate is governed by the "prime-plus" formula adopted in *Till*. *See In re Taranto*, 365 B.R. at 90–91. In a nutshell, the prime-plus formula serves to compensate creditors for the time value of their money and the risk of default. *Till*, 541 U.S. at 474–77. As instructed by *Till*, the bankruptcy court is obligated to select an interest rate "high enough to compensate the creditor for its risk but not so high as to doom the plan." *Id.* at 480. In other words, while the debtor may unilaterally propose an interest rate in her Chapter 13 plan, if the creditor fails to accept the proposal, the interest rate is governed by the prime-plus formula. *Id.* at 480–81.

Invoking *Till*, the Trustee contends that the prime-plus formula should have applied to the interest rate calculations for Chambers's repayment plan for its secured debt owed to DFCU.  But the elements of a cram down are absent, rendering the *Till* formula inapplicable.  Far from modifying the original contract terms, Chambers proposed to pay DFCU in accordance with those terms, without any modifications.  Nor did DFCU ultimately object to Chambers's proposal.  Although DFCU did initially object to confirmation, it did so on the grounds that insurance coverage was lacking, a dispute that was resolved before the confirmation hearing, with DFCU ultimately accepting the plan.  *Shaw*, 552 F.3d at 457; *see also In re Taranto*, 365 B.R. at 90–91 (noting if a debtor's proposed plan to pay the secured creditor was without modification and according to the contract terms, no cram down would occur).  In the absence of a cram down, the *Till* interest rate is not applicable.  *See Shaw*, 522 F.3d. at 457 (holding that a creditor's acceptance of a Chapter 13 plan "need not meet the requirements set forth in § 1325(a)(5)(B), including the present-value requirement"); *see also In re Taranto*, 365 B.R. at 90–91.

Instead, the bankruptcy code required the bankruptcy court to consider, among other things, whether Chambers would be able to comply with and make all payments under the plan and to ensure that the plan did not unfairly discriminate against any class of creditors.  *See* 11 U.S.C. §§ 1322(a)(3), 1325(a)(6).  Should a bankruptcy court have doubts on those fronts, it may modify the rights of the secured creditors, for instance by setting a new interest rate under the plan.  *See* 11 U.S.C. § 1322(b)(2); *see also Till*, 541 U.S. at 475 ("Chapter 13 expressly authorizes a bankruptcy court to modify the rights of any creditor whose claim is secured by an interest in anything other than 'real property that is the debtor's principal residence.'" (quoting 11 U.S.C. § 1322(b)(2))).  Here, the bankruptcy court, in reviewing the Chapter 13 plan, did not raise any concerns as to Chambers's ability to pay or comply with the plan, noting, among other

considerations, that Chambers was current in her vehicle payments. We thus see no reason to believe the bankruptcy court erred in concluding that the plan satisfied the requirements of § 1325(a).

B. The Trustee also challenges the bankruptcy court's decision to permit Chambers to make direct payments to DFCU, rather than make those payments through the Trustee. By way of background, § 1326(c) sets a presumption that Chapter 13 plan payments should be made through the trustee. 11 U.S.C. § 1326(c) ("Except as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."). Bankruptcy courts, however, may permit debtors to make payments directly to their creditors, provided the plan meets the confirmation requirements of § 1325(a). *See* 11 U.S.C. § 1326(c) ("*Except as otherwise provided in the plan or in the order confirming the plan*, the trustee shall make payments to creditors under the plan." (emphasis added)); *Giesbrecht v. Fitzgerald (In re Giesbrecht)*, 429 B.R. 682, 690 (B.A.P. 9th Cir. 2010) ("[B]ankruptcy courts have been afforded the discretion to make the determination of when direct payments may or may not be appropriate based upon the confirmation requirements of § 1325, policy reasons, and the factors set forth by case law, local rules or guidelines."). Local bankruptcy court rules, we note, supplement these statutory directives, allowing some payments to be made directly to the creditor, subject to "[a]ny timely objection." *See* Bankr. E.D. Mich. R. 3070-1.

In Chambers's Chapter 13 bankruptcy proceeding, however, the Trustee failed to object timely to the direct payment provision. True, as the Trustee notes, it did object to the payment to DFCU in its written objections and at the confirmation hearing. But those objections were exclusively tied to whether Chambers's payments violate the *Till* interest rate. The Trustee did not clearly articulate an objection to Chambers's direct payments to DFCU independent of his

objection to the *Till* interest rate.  And with the Trustee having failed to preserve the argument, we will not take it up on appeal.  *See New Prods. Corp. v. Dickinson Wright, PLLC (In re Modern Plastics Corp.)*, 890 F.3d 244, 253 (6th Cir. 2018) (explaining that arguments not raised before the bankruptcy court are deemed forfeited on appeal).

II.

For the foregoing reasons, we affirm.